STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

James H. BAUDHUIN, Defendant-Appellant.

Supreme Court

*No. 86–1391–CR. Argued November 4, 1987.—Decided December 10, 1987.*

(Also reported in 416 N.W.2d 60.)

For the plaintiff-respondent-petitioner the cause was argued by *Barry M. Levenson,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief by *Randall J. Nesbitt, Pinkert, Smith Weir & Jinkins,* Sturgeon Bay, and oral argument by *Randall J. Nesbitt.*

STEINMETZ, J.   The issue in this case is whether the Fourth Amendment to the United States Constitution and Article I, sec. 11 of the Wisconsin Constitution[1] prohibit the police from seizing, without

---

[1]The Fourth Amendment to the United States Constitution provides as follows:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article I, sec. 11 of the Wisconsin Constitution provides:

a warrant, an automobile and its occupants when there is a factual basis upon which to stop the driver for a traffic violation, but when the police officer intends only to render assistance to the driver and not to issue a traffic citation.

The defendant, James Baudhuin, was charged in a criminal complaint dated November 14, 1985, with third offense drunken driving arising out of a traffic arrest on October 26, 1985. Baudhuin moved to dismiss the charge on the ground that the arrest was illegal. He alleged that at the time of the stop the officer had neither probable cause nor reasonable suspicion to believe that a violation of the law had occurred.

The defendant's motion to dismiss was heard in the Door county circuit court before the Honorable Edwin C. Stephan. Judge Stephan denied the motion, stating in a written order:

> "The above matter having been heard on January 30, 1986 on a Motion to Dismiss based on illegal arrest, and the Court having found that on October 26, 1985 Officer Guy Binish of the Sturgeon Bay Police Department had reasonable cause to stop the defendant while he was driving his vehicle in the City of Sturgeon Bay; and that upon stopping the defendant Officer Binish observed sufficient facts giving him probable cause to arrest the defendant for Operation of a Motor Vehicle While Under the Influence of an Intoxicant.

"**Searches and seizures.** SECTION 11. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

"NOW, THEREFORE, IT IS HEREBY OR-
DERED:
"That the defendant's Motion to Dismiss is
denied."

Following a trial to the court, Baudhuin was
found guilty of operating a motor vehicle while under
the influence of an intoxicant. He was fined $1,000
plus costs and sentenced to 30 days in jail. His driving
privileges were revoked for 18 months, and he was
ordered to participate in an alcohol assessment pro-
gram. The sentence was stayed pending appeal.

In an unpublished opinion, the court of appeals
reversed the trial court's judgment of conviction with
directions to dismiss the complaint. The court of
appeals held that the stop of defendant's car was
illegal.

At about 2:00 a.m. on October 26, 1985, Officer
Guy V. Binish was on patrol in the city of Sturgeon
Bay. Officer Binish was an experienced police officer
with more than eight years on the force. He testified
that a car turned onto the street directly in front of
him and was operating at a very slow speed.

The speed limit was 25 miles per hour. Binish
testified he paced the car for six to seven blocks and
estimated that it traveled no more than 17 miles an
hour. Binish saw no flat tires or defective lights or any
other condition that explained the slow rate of speed.
There were eight to ten vehicles behind the squad car
and none in front of defendant's slow moving car.
Officer Binish testified he believed the car was imped-
ing traffic.

After following for at least eight blocks, Officer
Binish stopped the slow moving car "to see if the
driver needed a hand if he had something mechanical-
ly wrong with his car." Officer Binish explained to

645

Baudhuin that the reason for the stop was that Baudhuin "was only doing 17 miles an hour in a 25 speed zone." Although Baudhuin was apparently impeding traffic, Binish did not anticipate issuing a traffic citation. Binish asked Baudhuin "if there was something wrong with his car that I [Binish] could help him with."

As soon as Baudhuin began to talk, the officer detected a strong odor of intoxicant on his breath and noticed that Baudhuin was slurring his words. Binish asked the defendant to get out of the car to perform field sobriety tests. The defendant complied and submitted to several tests, the results of which led Binish to conclude that the defendant was not capable of driving and was "well beyond the legal limit of intoxication."

A breathalyzer test taken at the police station registered .25 percent blood alcohol. The defendant was charged with violating sec. 346.63(1)(a) and (b), Stats.[2] Baudhuin had been convicted of two other operating under the influence of intoxicant charges within the past five-year period.

At the motion to dismiss hearing, the defendant offered evidence contrary to the officer's testimony to

---

[2]Sec. 346.63(1)(a) and (b), Stats., provides as follows:

"346.63 **Operating under influence of intoxicant or other drug.** (1) No person may drive or operate a motor vehicle while:
"(a)  Under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving; or
"(b)  The person has a blood alcohol concentration of 0.1% or more by weight of alcohol in that person's blood or 0.1 grams or more of alcohol in 210 liters of that person's breath."

show that Baudhuin drove somewhere between 20 and 23 miles per hour. The defense also offered evidence contrary to the officer's testimony regarding the number of automobiles following the defendant's and the location of the officer's vehicle with respect to the defendant's.

The defendant argues that in denying the motion to dismiss on the basis of a public safety stop, the judge made no finding of probable cause. While it is true that the judge did not specifically find probable cause for the stop, the judge found the officer had "reasonable cause to stop the defendant at the time and place." The judge further stated that because the officer did not indiscriminately stop the defendant without a reason, there was no demonstration of a violation of his constitutional rights. The judge concluded that the situation basically involved a public safety stop.

Although the judge did not specifically state that traffic was impeded, he stated that the case involved a situation where the defendant was traveling "unusually slow." This statement, coupled with the finding of reasonable cause for the stop, indicates that the judge believed the officer's version of the disputed facts rather than those presented by the defendant. The credibility of witnesses and weight to be given their testimony are matters for the trial court to decide. *Leciejewski v. Sedlak,* 116 Wis. 2d 629, 637, 342 N.W.2d 734 (1984).

The state advances two arguments. First, when the police perform legitimate and traditional police functions in stopping a vehicle to render assistance, the lack of probable cause or reasonable suspicion to believe that the law has been violated does not render

the stop illegal so as to require suppression of inadvertently discovered criminal evidence. The state alternatively argues that even though the officer intended to stop the defendant's car only to see if he needed assistance, the officer had a factual basis upon which to stop Baudhuin for a traffic violation and, therefore, the stop was reasonable and, therefore, legal.

As this court has stated, an appellate court is concerned with whether a court decision being reviewed is correct, rather than with the reasoning employed by the circuit court. If the holding is correct, it should be sustained, and this court may do so on a theory or on reasoning not presented to the trial court. *Liberty Trucking Co. v. ILHR Department,* 57 Wis. 2d 331, 342, 204 N.W.2d 457 (1973).

We have previously recognized that stopping an automobile and detaining its occupants constitutes a seizure under the Fourth Amendment. *State v. Guzy,* 139 Wis. 2d 663, 674, 407 N.W.2d 548 (1987); *State v. Goebel,* 103 Wis. 2d 203, 208, 307 N.W.2d 915 (1981); *Delaware v. Prause,* 440 U.S. 648, 653 (1979). The validity of such a search and seizure depends initially upon whether the defendant in this case was lawfully stopped. Section 345.22, Stats., provides that: "A person may be arrested without a warrant for the violation of a traffic regulation if the traffic officer has reasonable grounds to believe that the person is violating or has violated a traffic regulation." Implicit in the authority to arrest for a traffic violation is the authority to stop the vehicle where the officer has reasonable grounds to believe the violation has occurred. The legality of the initial stop is a question of law and we are not bound by the court of appeals

decision on this question. *See State v. Wisumierski,* 106 Wis. 2d 722, 733, 317 N.W.2d 484 (1982); *State v. Williamson,* 113 Wis. 2d 389, 401, 335 N.W.2d 814 (1983). For the reasons discussed below, we decline to sustain the stop on the basis of either a "Good Samaritan" stop or a public safety stop.

The state concedes and the record shows that the officer intended to stop the defendant's car to see if Baudhuin needed assistance. The officer stated at the time of the stop that he did not intend to issue Baudhuin a ticket for impeding traffic.

The state cites *State v. Goebel,* 103 Wis. 2d at 208, for this court's recognition of the importance and propriety of citizen-police contacts. In *Goebel,* this court stated:

> "The defendant does not allege any impropriety in Officer Burch's original contact with the defendant, wherein he inquired whether defendant was having car trouble. Contacts of this sort are not only authorized, but constitute an important duty of law enforcement officers."

However, *Goebel* is distinguishable from the instant case because here the officer stopped the slow moving automobile and then made his subsequent observations as to the defendant's condition. In *Goebel,* the automobile was already stopped and was parked partially on the roadway. Moreover, in *Goebel,* the occupant's body movements raised the officer's suspicions as he approached the stopped vehicle. *Goebel* cannot be considered a case defining a good faith stop of a motor vehicle to render assistance.

The constitutionality of the "Good Samaritan" stop, *i.e.,* one where the police officer makes a good faith stop of a motor vehicle to render assistance, has

not yet been decided by this court. Nor has this court ruled on the constitutionally permissible parameters of seizures of automobiles detained on the basis of a public safety stop. However, the facts of this case are not appropriate to determine the minimal standards for such stops to be upheld under these doctrines because this case also involves a traffic law violation. The issue of the Good Samaritan stop should be decided in a case where the officer has no other basis in law to stop a vehicle except to offer assistance. This case does not require this court to define the factual limitations of a Good Samaritan or public safety stop which could legitimately serve as a basis for plain view observations of the contents of the automobile or condition of its occupants.

The officer had articulable facts to believe that the defendant was violating a traffic law under a reasonable grounds standard. The stop of Baudhuin's car was lawful because he was impeding traffic in violation of sec. 346.59(1), Stats.[3] Officer Binish testified that the defendant "was impeding traffic." Although the officer did not anticipate issuing a citation, it was the defendant's apparent violation of the law, impeding traffic, that prompted the stop to determine if assistance was needed. Officer Binish had before him objective facts that would have justified a stop if his purpose were to issue a citation for impeding traffic. But he acted on a different theory.

---

[3]Sec. 346.59(1), Stats., provides:

"**Minimum speed regulation.** (1) No person shall drive a motor vehicle at a speed so slow as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or is necessary to comply with the law."

650

As long as there was a proper legal basis to justify the intrusion, the officer's subjective motivation does not require suppression of the evidence or dismissal. The officer's subjective intent does not alone render a search or seizure of an automobile or its occupants illegal, as long as there were objective facts that would have supported a correct legal theory to be applied and as long as there existed articulable facts fitting the traffic law violation.

In *Scott v. United States,* 436 U.S. 128, 138 (1978), the United States Supreme Court stated:

> "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the offi-cer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. ... The Courts of Appeals which have considered the matter have likewise general-ly followed these principles, first examining the challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." (Footnote omitted.)

In his treatise on the law of search and seizure, Professor La Fave discusses the subject of reliance on an incorrect doctrine to justify a Fourth Amendment intrusion. 1 W. La Fave, *Search and Seizure,* sec. 1.4(d), 86 (2d ed. 1987). The text quotes *Klingler v. United States,* 409 F.2d 299 (8th Cir. 1969), wherein the police arrested the defendant for vagrancy. The Court concluded that while no grounds existed to arrest Klingler for vagrancy, there were grounds to arrest for robbery. The arrest was lawful "[n]otwithstanding the officer's mistaken statement of grounds." *Klingler,* 409 F.2d at 305. Professor La Fave

writes: "Many other courts have reached the same result, which is as it should be." La Fave at 87.

La Fave also cites as an example, *United States v. Ochs,* 595 F.2d 1247, 1256 (2d Cir. 1979) which stated: "It is of no importance that the police may have thought their only power was to make an inventory; the test is what could lawfully be done, not what the policemen thought the source of their power to be."

The officer observed facts demonstrating the defendant was violating a traffic law by impeding traffic. The stop of defendant's vehicle was therefore legally permissible, even though his subjective intent was to see only if he could assist the defendant. The trial court properly denied the defendant's motion to dismiss.

*By the Court.*—The decision of the court of appeals is reversed.