STATE of Wisconsin, Plaintiff-Respondent,

v.

Samuel R. DUNN, Defendant-Appellant.

Court of Appeals

*No. 90–0793–CR. Submitted on briefs August 1, 1990.—Decided September 11, 1990.*

(Also reported in 462 N.W.2d 538.)

On behalf of defendant-appellant, the cause was submitted on the brief of *James R. Duchemin* of *Herrick, Hart, Duchemin, Danielson & Guettinger, S.C.* of Eau Claire.

On behalf of plaintiff-respondent, the cause was submitted on the brief of *Richard White,* assistant district attorney, of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Samuel Dunn appeals a judgment of conviction for operating a motor vehicle on a public highway while under the influence of intoxicants in violation of sec. 346.63(1), Stats. (second offense-criminal). Dunn entered a no contest plea following the circuit court's denial of his motion to dismiss based upon an illegal arrest, search and seizure. An order denying a motion to suppress evidence may be reviewed on appeal from a judgment of conviction notwithstanding the fact that the judgment was entered upon a guilty plea. Section 971.31(10), Stats. Although denominated a motion to dismiss, Dunn's motion was in essence a motion to suppress. Because the trial court's finding that the officer entered Dunn's vehicle in a good faith attempt to render assistance is not clearly erroneous and because a reasonable person in the officer's circumstances would have thought entry was necessary, we affirm.

141

The trial court is authorized to state its findings of fact orally on the record following the close of evidence. Section 805.17(2), Stats. These findings shall not be set aside on appeal unless clearly erroneous, and due regard shall be given the trial court's opportunity to judge the credibility of the witnesses. *Id.* An appellate court is not bound by a trial court's conclusions of law and decides these matters de novo. *Green Scapular Crusade v. Town of Palmyra,* 118 Wis. 2d 135, 138, 345 N.W.2d 523, 525–26 (Ct. App. 1984).

The facts were established at the hearing on the defense motion to suppress evidence. Altoona patrol sergeant Kelly Dahlke pulled her squad car onto the premises of the Eau Claire County municipal shops at 2:10 a.m. on February 11, 1990, for the purpose of fueling her vehicle at the county gas pumps. She observed another vehicle pull into the lot and stop some twenty-five or thirty feet away. Although Dunn testified he was already parked in the lot when the officer arrived, the circuit court found Dunn's testimony suspect and lacking probative value in view of his "extraordinarily high" blood test result (.321). Credibility of witnesses and the weight given their testimony are matters for the trial court to decide. *State v. Baudhuin,* 141 Wis. 2d 642, 647, 416 N.W.2d 60, 62 (1987).

Dahlke observed the vehicle door open, saw the "subject inside of it stick his head out the door either to spit something out or to look under the door," and noted the engine had been turned off. The vehicle remained stationary for the several minutes it took her to gas the squad car. She thought "perhaps it may be somebody that wanted to talk to me," and she approached the vehicle.

Dahlke observed Dunn slumped over in the seat, "almost laying on the seat." Dahlke's testimony in this respect could be read either to suggest that she saw Dunn's position on the seat before or after the car door was opened. Dahlke also testified that she could not recall whether she or Dunn opened the door.[1] The court, in its bench decision, found that Dahlke opened the door but that the observation of Dunn's position on the seat was made prior to that entry. The court stated: "upon approaching the car [Dahlke] could observe that [Dunn] was in some sort of trouble, and upon opening the car could observe that probably he was under the influence." Even where a witness makes contradictory statements, it is within the province of the trier of fact to accept or rely on either version and to disregard in part or total the other. *Graves v. Travelers Ins. Co.,* 66 Wis. 2d 124, 136–37, 224 N.W.2d 398, 405 (1974).

---

[1]Dahlke's testimony was as follows:

A   I don't recall if he opened the door or I opened the door. *However, the door was opened and subject was somewhat slumped over* in the seat when I initially saw him.

Q   Okay. *Now, you say as you approached he was somewhat slumped over.* Can you be more particular? What did he look like.

A   He was leaning more towards the right almost laying on the seat. *He wasn't sitting upright.* He was leaned more over to the right.

Q   Okay. *Then the door was opened?*

A   *Yes.* I don't recall if I opened it or he opened it, but the door was opened.

Q   As the door was opened, did you make any additional observations?

A   At that time I detected a very strong odor of intoxicants within the vehicle. (Emphasis added.)

After Dahlke detected a "very strong odor of intoxicants . . . very, very powerful," she requested Dunn's driver's license, he produced it and she asked him "what the problem was." Dunn pointed to the ground and said "I have the flu. I had to throw up." She observed vomit on the ground and on the car door, noted Dunn's speech was "somewhat slurred" and told him she could detect the odor of intoxicants. Dunn replied "No," and she requested he exit the vehicle. Dunn refused several times, using expletives, and Dahlke called for other officers who arrived and made an arrest for OWI and resisting an officer.

As to Dahlke's initial entry to the vehicle, Wisconsin recognizes an exception to the fourth amendment's warrant requirement in an emergency. *See State v. Boggess,* 115 Wis. 2d 443, 340 N.W.2d 516 (1983). The burden to prove the exception for exigent circumstances is upon the government. *Id.* at 449, 340 N.W.2d at 520. A government official must be motivated solely by a perceived need to render aid or assistance and not to obtain evidence for prosecution. *Id.* at 450, 340 N.W.2d at 521. The determination of an emergency exception requires a two-step analysis: A finding that the officer is actually motivated by a need to render aid, a subjective test, and a conclusion that a reasonable person under the circumstances would have thought an emergency existed, an objective test. *Id.* at 450–51, 340 N.W.2d at 521.

In *Baudhuin,* our supreme court declined to review the constitutionality of a "Good Samaritan" stop, *i.e.,* one where the police officer makes a good faith stop of a motor vehicle to render assistance. *Id.* at 649–50, 416 N.W.2d at 63. *Baudhuin* held that the issue should be decided in a case where the officer has no other basis in

law to stop a vehicle except to offer assistance. *Id.* at 650, 416 N.W.2d at 63. This would appear to be such a case.

As both *Baudhuin* and *Boggess* suggest, the validity of the entry or stop requires a finding that the officer acted in good faith, that is, had the motive only to assist and not to search for evidence. The circuit court here implicitly made such a finding in its ruling from the bench when it denied Dunn's motion, stating: "The officer was meeting community needs in going up to his car because it appeared that he may have a question, and upon approaching the car could observe that he was in some sort of trouble . . .."

The objective or reasonable person test to validate an emergency entry is also met under the circumstances here. Whether the facts fulfill a particular legal standard is a question of law. *Nottelson v. DILHR,* 94 Wis. 2d 106, 115–16, 287 N.W.2d 763, 768 (1980). The officer observed someone pull into an isolated municipal shop area at 2 a.m., turn off the motor of the vehicle and remain stationary for several minutes within twenty-five or thirty feet of an apparently plainly visible police officer. Upon approaching the vehicle, the officer observed that the occupant was slumped over in the seat. These observations would give rise to a belief by a reasonable person that the subject needed assistance. The police officer was therefore justified in opening the door of the Dunn vehicle.

This conclusion upholding the initial entry, however, does not end our inquiry. The officer, upon entry, demanded Dunn's driver's license. Once entry was made, and absent probable cause, any investigation of possible criminal behavior required objective, articulable evidence before the officer could detain Dunn for purposes

of identification and ask for an explanation of his conduct. *See Terry v. Ohio,* 392 U.S. 1, 21 (1968); *see also State v. Goebel,* 103 Wis. 2d 203, 307 N.W.2d 915 (1981).

The officer's observations upon opening the car door gave rise to facts forming a sufficient basis to invoke the *Terry* doctrine: She detected a powerful odor of intoxicants that, when coupled with her previous observations, negated her original belief of an emergency and suggested instead that the subject had been driving under the influence. The evidence that Dunn was the only occupant in the vehicle was sufficient to reasonably suggest he had driven the car on the highway. The officer was therefore entitled to inquire of Dunn's identity and ask for an explanation of his conduct. The fact that some of Dunn's circumstances were entirely consistent with innocent behavior is not dispositive, *Goebel,* 103 Wis. 2d at 210, 307 N.W.2d at 918, and the question, rather, is whether the police officer could point to specific and articulable facts that, taken together with rational inferences from these facts, reasonably warranted further intrusion. *Id.* at 208, 307 N.W.2d at 918.

Following the *Terry*-type inquiry, and after observing Dunn's slurred response to her inquiry, his irrational denial of the odor of intoxicants and his profane and prolonged refusal to cooperate, and taking into account all of the surrounding circumstances, Dahlke had the evidentiary probable cause to justify the formal arrest.

*By the Court.*—Judgment affirmed.