COURT OF APPEALS
DECISION
DATED AND FILED

June 18, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2017AP895-CR**

Cir. Ct. No. **2015CF177**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RONALD J. WENDLING,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Grant County: CRAIG R. DAY, Judge. *Affirmed*.

Before Blanchard, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Ronald Wendling appeals a judgment of conviction. The issue is whether a police officer had reasonable suspicion to stop Wendling's vehicle because, when the officer checked the vehicle's license plate number in a database, the officer received a response to the effect of "unable to process." We conclude that there was reasonable suspicion. We affirm.

¶2      Wendling was convicted, after a jury trial, of one felony count of operating with a restricted controlled substance, one felony count of possession of THC, and one misdemeanor count of possession of paraphernalia. All of these charges arose from a traffic stop. Wendling moved to suppress evidence obtained from the stop. After an evidentiary hearing, the circuit court denied the motion.

¶3      The vehicle stop was made by an officer who testified that she was randomly checking on passing license plates. She entered Wendling's Illinois plate number into the patrol car computer and testified that she received back a response to the effect of "unable to process." She then radioed for dispatch to run the same check, and dispatch was also unable to obtain information. The officer did not testify to any other reason for making the traffic stop.

## I. ARGUMENTS AND LEGAL CONTEXT

¶4      Wendling argues that the meaning of "unable to process" must be determined from the perspective of how a reasonable officer would understand that response, and that the only potential source for evidence of what that understanding would be was the testimony of the officer who made the stop. He argues that the officer never testified that improper registration is one of the possible meanings of the "unable to process" response, and therefore the State failed to prove a reasonable suspicion that his registration was improper. He further argues that, when the circuit court found that improper registration is one

of the possible meanings, the court was supplying its own interpretation of "unable to process" that was not supported by evidence in the record.

¶5 In response, the State argues first that the officer's subjective beliefs about the computer response "unable to process" are irrelevant. We agree that the officer's subjective beliefs are not part of the legal analysis. However, for reasons we now explain, her testimony is nonetheless highly relevant in making the factual finding of what training and experience a reasonable officer would have regarding this computer response, which is necessary before we can determine what a reasonable officer could infer from this response.

¶6 To begin, the cases cited by the State show that, even though the officer's subjective motivation for the stop is irrelevant, the determination of reasonable suspicion is still based on the *facts* known to the officer at that time. For example, the State relies on *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), for the proposition that the officer's action is valid even if the officer lacks the state of mind related to the legal justification for the action. Notably, however, that part of the Court's discussion begins with this statement: "Our cases make clear that an arresting officer's state of mind (*except for the facts that he knows*) is irrelevant to the existence of probable cause." *Id.* (emphasis added).

¶7 The State also relies on a Wisconsin case that it describes as holding, in the State's words, that "the lawfulness of a traffic stop depends on the objective facts *that the officer observes*, not the officer's subjective intent" (emphasis added by this court). *See State v. Baudhuin*, 141 Wis. 2d 642, 650-51, 416 N.W.2d 60 (1987). We agree with the State's characterization of the holding in *Baudhuin*. Therefore, although the officer's subjective motivation or legal analysis of the

3

facts at the time is irrelevant, the officer's perception of the facts is highly relevant.

¶8  In addition, a determination of reasonable suspicion must be based on not just the observed facts known to the officer, but also on the rational inferences that can be drawn from those observed facts. *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634.  Here, the observed fact is that the officer received the "unable to process" response.  That fact is not in dispute. Instead, the question is what inferences a reasonable officer could draw about the vehicle's registration from that observed fact.

¶9  That question is important here because "unable to process" appears to have different potential meanings that lead to different legal outcomes.  It is plausible that "unable to process" indicates some kind of failure of the system itself, meaning that the database of registration information was not accessed in response to the electronic query.  If that is the meaning, this response does not suggest a legal problem with the registration, and therefore does not provide a legal basis for a stop.  However, it is also plausible that "unable to process" can at least sometimes indicate a problem with the legality of the registration for the entered plate number.

¶10  To address that ambiguity, the State contends that improper registration is "objectively" a "reasonable and common-sense inference to draw" from the "unable to process" response.  However, in that formulation the State neglects to specify *who* would draw that inference.  In considering the inferences to support a stop, the focus is on what a reasonable *officer* would infer, not a layperson.  "The crucial question is whether the facts of the case would warrant *a reasonable police officer, in light of his or her training and experience*, to suspect

4

that the individual has committed, was committing, or is about to commit a crime." *Id.*, ¶13 (emphasis added).

¶11 Here, a reasonable officer would be one who is trained in the use of this database system and has experience with how it operates. That training and experience would then be the background knowledge on which the officer would draw inferences about what, if anything, "unable to process" means about the vehicle registration. Accordingly, to decide whether reasonable suspicion was present, there must first be a finding of fact as to what training and experience a reasonable officer would have to interpret that response. In summary, a court can reach a determination as to what a reasonable officer may infer from this response only based on evidence at a suppression hearing that establishes the training and experience that a reasonable officer would have on this topic. In the context of the suppression hearing, it may be true, as the State argues, that the officer's own subjective factual inferences when she stopped Wendling do not play a role in the legal analysis. However, the officer's testimony about her training and experience is nonetheless relevant because it is a source of evidence about the training and experience that a reasonable officer would have. Indeed, her testimony, based on her own experience with the system, is the *only* source of such evidence in this record.

## II. APPLICATION TO THE FACTS OF THIS CASE

¶12 At the suppression hearing, the officer testified that she typed the vehicle's license plate information into "eTIME," a database that can be accessed from a computer in her squad car that contains information from the Department of Transportation and that "gives the vehicle description, the number, and registered owner" for vehicles in all 50 states. The officer "didn't get any

response back"; instead, the computer gave an "unable to process" response.[1] The State asked the officer what the "unable to process" response meant to her, based on her experience with the system:

> Q: And unable to process, have you seen that before?
>
> A: Yes, sir.
>
> Q: What does that mean to you given the fact that you've worked with that system before?
>
> A: To me it means either I ran the plate wrong or there wasn't enough information regarding the plate that was on the vehicle to get back, or there could be a number of things. But those are the most two [sic] common issues that I have when I get that answer, or response back.
>
> Q: That you ran it wrong or what's the other one?
>
> A: That there wasn't enough given information for the plate for that vehicle. Such as the VIN number, registered owner, the make, the color, so on.

The officer further testified that, after receiving the unable to process response, she got closer to the vehicle and confirmed that she had typed the correct license plate information into the computer in her squad. She also ran the license plate number through Grant County dispatch, which was also "unable to get the vehicle back."

¶13 In argument after the testimony, the State summarized the officer's testimony as meaning that "for all intents and purposes, the information that the officer has is that that vehicle is not properly registered." In response, counsel for

---

[1] The officer testified that she did not know the "exact terms," but that "basically it just says unable to get the information back." She also described the response as "not able to identify."

Wendling asserted: "And I don't think she gave testimony that therefore I conclude that this plate's no good."

¶14 After argument, the circuit court noted the ambiguity of the computer response. The court also observed that the fact that this was an out-of-state plate "adds another degree of ambiguity and unreliability." The court gave the parties an opportunity for further briefing on applicable case law.

¶15 After briefing, the circuit court denied Wendling's motion to suppress. The court held that reasonable suspicion was present because the "officer is not required to rule out innocent explanations." The court asserted that there may have been innocent explanations here, but that there were also "problematic" ones for Wendling:

> [A]mong the problematic explanations are that, you know, this is a plate that somebody just randomly threw on a vehicle after they found it at the junkyard. That the plate doesn't match the vehicle; that the plate has long since expired and therefore there is no computer record. There are reasons for a law enforcement officer under those circumstances to check out what's going on with this vehicle, what's going on with this plate, what's going on with the registration.

¶16 In the above passage we regard the court as having made a factual finding about what experience a reasonable officer would have relating to the "unable to process" response. By saying that the license plate could have been a found or expired one, the court was, in practical effect, finding as a fact that a reasonable officer's experience is that "unable to process" sometimes means that the vehicle is not properly registered.

¶17 Wendling argues that this finding was not supported by evidence because the officer never testified that "unable to process" sometimes means the

7

vehicle is not properly registered. However, we conclude that in making that finding the court made a reasonable interpretation of the officer's testimony. The officer testified that she had two understandings of "unable to process." The first was that she entered the incorrect license plate number, which the officer ruled out by getting closer to the vehicle and confirming that she had typed in the correct number. As to the officer's second possible understanding, we conclude that the court reasonably interpreted the officer's testimony as meaning that, in her experience, there was a potential problem with the vehicle's registration. The court's finding of fact about what experience a reasonable officer would have regarding the "unable to process" response was not clearly erroneous. And, based on that finding, the court properly concluded that a reasonable officer could infer that there was potentially a problem with the registration.

¶18    If we affirm the conclusion that a reasonable officer could infer that the "unable to process" response sometimes indicates a problem with the legality of the vehicle's registration, Wendling appears to agree that this inference would be a proper basis to stop his vehicle. Therefore, having affirmed that conclusion, we conclude that his suppression motion was properly denied.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

8