# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 5, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2017-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2018CT82**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOSEPH S. SCHENIAN,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Manitowoc County: JERILYN M. DIETZ, Judge. *Affirmed.*

¶1 LAZAR, J.[1] Joseph S. Schenian appeals from a judgment of the circuit court finding him guilty of operating a motor vehicle with a prohibited

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

alcohol concentration, second offense, contrary to WIS. STAT. § 346.63(1)(b).[2] Schenian argues that law enforcement officers violated his Fourth Amendment[3] constitutional rights to be free from unreasonable searches and seizures when they failed to specifically request that he provide a preliminary breath test pursuant to WIS. STAT. § 343.303. He also asserts that he was arrested without probable cause. Accordingly, Schenian seeks reversal of the court's denial of his motions to suppress evidence and subsequent judgment. The State asserts that the decisions of the circuit court were proper because the administration of the preliminary breath test was based on freely given voluntary consent and there was sufficient probable cause to arrest Schenian. For the reasons that follow, this court affirms.

## BACKGROUND

¶2      The following is a summary of testimony taken at the October 22, 2018 hearing regarding Schenian's pretrial motions to suppress evidence. Manitowoc County Sheriff's Deputy Cory Hartman, an officer with nine years' experience and significant specific training and experience in OWI investigations, was on duty just after 2:30 a.m. on December 23, 2017, when he observed an oncoming Jeep with a very bright light mounted to its top. Hartman testified that the light was so bright that it blinded him and affected his ability to operate his vehicle. Hartman turned his squad around and followed the Jeep.

---

[2] Following a no contest plea, the circuit court found Schenian guilty on October 17, 2023, but no written judgment of conviction was entered. This court issued a jurisdictional order directing Schenian to obtain a written judgment on December 8, 2023, and a written judgment was finally entered on December 12, 2023.

[3] U.S. CONST. amend. IV. In the Wisconsin Constitution, article I, section 11 is substantively identical. *State v. Richter*, 2000 WI 58, ¶27, 235 Wis. 2d 524, 612 N.W.2d 29.

¶3     When Hartman turned on his emergency lights, the Jeep stopped. Hartman made contact with the driver (and only human occupant) of the Jeep, Schenian, and informed him that he was being stopped because of the blinding light. He noticed the strong odor of intoxicants on Schenian's breath and observed that Schenian had bloodshot, watery eyes. Schenian admitted to Hartman that he had been at his employer's Christmas party before going to a bar and that he had consumed a total of five beers that evening; he began drinking around four in the afternoon and had his last drink at approximately two in the morning.

¶4     It was a cold and windy night. Along with another officer who had arrived on the scene, Hartman "talked with [Schenian] about moving [the] traffic stop location to an interior location because [he] wanted to run him through some tests, which [Schenian] agreed to do." Once they arrived at a nearby gas station, the first field sobriety test conducted by the officers was the horizontal gaze nystagmus test ("HGN test"), pursuant to which a subject is tested for a maximum of six clues: lack of smooth pursuit in each eye, distinct jerkiness at maximum deviation in each eye, and jerkiness prior to forty-five degrees in each eye. Hartman observed all six clues in Schenian, and testified that, when an individual shows at least four of the six clues, there is a seventy-seven percent chance that he or she has a .10 blood alcohol concentration or higher. Hartman also observed Schenian to be "swaying in a circular fashion" during this test, showing poor balance consistent with impairment.

¶5     Although Hartman testified that the HGN test is considered the most reliable of the standardized field sobriety tests due to the fact that it is involuntary and impossible to "practice … or defeat," he moved on to conducting additional tests. Next was the vertical nystagmus test. He observed involuntary jerkiness in both eyes, which suggested "a high dose of intoxicants consumed."

¶6      Hartman then administered the "walk and turn" test, instructing Schenian to take nine heel-to-toe steps in one direction (while looking at his toes, keeping his arms down at his sides, and counting aloud) before turning and taking another nine steps in the opposite direction. Of the eight possible clues in this test, Hartman observed one from Schenian—he stepped off the line. Hartman testified that two clues or more is generally indicative of impairment.

¶7      Hartman moved on to conducting the test known as the "one leg stand," during which Schenian was told to raise one foot six inches off the ground and hold that position. Schenian put his foot down after twenty-five seconds. After he put his foot down, Hartman observed that he "began to sway back and forth." Hartman testified that these actions constituted two clues (out of a possible four) that indicated impairment; as Hartman testified, many "impaired people could make it to 25 [seconds] but making it to 30 is harder."

¶8      Finally, Hartman conducted some nonstandardized "divided attention" tests. These included a counting test and an alphabet test, which required Schenian to count a specific set of numbers in reverse and say the letters in a specific portion of the alphabet. Schenian struggled to perform the counting test, stating one number twice, skipping another, and failing to stop at the correct number, but Hartman did not count any clues from the alphabet test.

¶9      At the conclusion of these tests, Hartman asked Schenian whether he believed he should be driving a vehicle. According to Hartman, Schenian's answer was negative, but he said that "his cellphone died so he couldn't call for a ride and since it was a short ride home he didn't think it would have mattered." Hartman then said to Schenian: "I've got one last test for you to perform, what I'm going to need you to do is give me approximately an eight second breath, just

blow into the tube here." According to Hartman, he did not ask "yes or no" whether Schenian wanted to do this preliminary breath test ("PBT"), but Schenian did not indicate that he did not want to complete the test. Hartman testified that Schenian "consented to doing all the other tests" and did not express any hesitation during the PBT. He further testified that he did not use force or have a weapon drawn at any point during the various tests.

¶10 The result of the PBT was .150 blood alcohol concentration, which Hartman believed showed that Schenian was impaired. Hartman placed Schenian under arrest.

¶11 On cross-examination, Hartman agreed that he did not notice any questionable driving or inappropriate, untimely responses to his questions on Schenian's part. Hartman also agreed that fatigue can cause nystagmus. Schenian had clear speech, with no slurring of his words. In addition, with respect to the one-leg stand test, Schenian's counsel questioned whether swaying and putting a foot down constituted two separate clues when they occurred contemporaneously. Hartman responded, "Okay, one clue." Hartman also agreed that he had already made a probable cause determination and was planning to arrest Schenian prior to administering the PBT. When asked whether he asked Schenian if he was willing to do the PBT, Hartman testified, "At the beginning of our contact after he exited the vehicle I asked him if he'd be willing to do tests for me. At that point he said yes so I carried on throughout the tests. I didn't ask specifically for the PBT, no."

¶12 In response to a similar question from the State on redirect, Hartman agreed that "at no point did [Schenian] say that he was no longer willing to do any of the tests." Hartman also stated that his change in answer regarding the one-leg stand test—from two clues observed to one—was more from the defense implying

he was wrong than from a memory of his training; he could not recall exactly how the training manual instructed officers to count the number of clues in that situation.

¶13 For its second and final witness, the State called Lieutenant Michael Polich, an employee of the Manitowoc County Sheriff's Department and a standardized field sobriety training instructor. He testified that swaying and putting a foot down during the one-leg stand test are separate and independent clues.

¶14 Schenian's pretrial motions sought to suppress the PBT results "due to coerced collection of PBT breath sample" and because the officers did not have probable cause to arrest him and "lacked the reasonable grounds necessary to administer a PBT." The circuit court denied both motions in written decisions. First, relying upon *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 542 N.W.2d 196 (Ct. App. 1995), *overruled on other grounds by* *Washburn County v. Smith*, 2008 WI 23, 308 Wis. 2d 65, 746 N.W.2d 243, the court concluded that, similar to his right to refuse to take standardized field sobriety tests, Schenian had the right to refuse the preliminary breath test, but he declined to exercise it. The court held that the officers were not required to "use a particular set of words" and held that

> Mr. Schenian retained his right to refuse the PBT without penalty, and the request for the tests made early on did not cease simply because the officer brought out the PBT. I find that this was a voluntarily taken test. I therefore respectfully deny the defendant's motion to suppress the preliminary breath test.

¶15 In the order denying the probable cause motion, the circuit court concluded

> The totality of the circumstances here, in which the deputy observed a strong odor of intoxicants, bloodshot and watery

eyes on a person undisputedly operating a motor vehicle, an admission of the consumption of alcohol, at 2:30 in the morning on a Saturday night/Sunday morning, coming from a bar, clues on every standardized field sobriety test, and sufficient clues to be indicative of impairment on two of the three, all strongly suggest that Deputy Hartman had sufficient probable cause to request a PBT…. Mr. Schenian, to be sure, did not exhibit every possible indicator of impairment. The defense quite ably and thoroughly describes the areas in which he successfully navigated the screening mechanisms available to law enforcement. However, those areas do not diminish the sum of the indicators Deputy Hartman observed, nor undermine the reasons Deputy Hartman sought the PBT. Here, the results was .150, well in excess of the legal limit. With that, Deputy Hartman had probable cause to arrest Mr. Schenian for a violation of [WIS. STAT. §] 346.63(1)(a) … and did so.

## DISCUSSION

¶16 Schenian appeals, contending that his constitutional rights were violated when the police officer did not specifically request that he take a preliminary breath test. *See **Davis v. United States***, 564 U.S. 229, 236 (2011) ("The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" (quoting U.S. CONST. amend. IV)). He further contends that the "sparse factors" the circuit court relied upon did not support probable cause to arrest Schenian.

¶17 The State argues that United States Supreme Court precedent allows for warrantless breath tests. *See **Birchfield v. North Dakota***, 579 U.S. 438, 463 (2016) (citing ***Skinner v. Railway Lab. Execs.' Ass'n***, 489 U.S. 602, 626 (1989)). While true, the case cited by the State discusses a search incident to arrest; it is not applicable here. In the alternative, the State asserts that the circuit court did not err when it found that Schenian had voluntarily consented to take the PBT. The State also contends that, under the totality of the circumstances, there was more

7

than enough evidence of impairment to find probable cause to arrest Schenian. This court agrees.

### I.    Standard of Review

¶18    The issues on appeal center upon constitutional rights, and, as such, are subject to a two-step process of review. *See State v. Dalton*, 2018 WI 85, ¶33, 383 Wis. 2d 147, 914 N.W.2d 120; *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120.  First, this court will "uphold a circuit court's findings of fact unless they are clearly erroneous." *State v. Hughes*, 2000 WI 24, ¶15, 233 Wis. 2d 280, 607 N.W.2d 621 (citing *State v. Secrist*, 224 Wis. 2d 201, 207, 589 N.W.2d 387 (1999)).  Second, this court applies the law to those facts de novo.  *See State v. Samuel*, 2002 WI 34, ¶15, 252 Wis. 2d 26, 643 N.W.2d 423. This process requires courts to "analyze issues of constitutional fact" by "on one hand giving deference to the circuit court's findings of evidentiary fact, and on the other reviewing independently the circuit court's application of those facts to constitutional standards." *State v. Malone*, 2004 WI 108, ¶14, 274 Wis. 2d 540, 683 N.W.2d 1.

¶19    The purpose of the Fourth Amendment (and the corresponding Wisconsin constitutional provision) "is to safeguard individuals' privacy and security against arbitrary governmental invasions, which requires striking a balance between the intrusion on an individual's privacy and the government's promotion of its legitimate interests."  *State v. Sykes*, 2005 WI 48, ¶13, 279 Wis. 2d 742, 695 N.W.2d 277.  The Fourth Amendment is applicable to and binding upon the states. *State v. Koch*, 175 Wis. 2d 684, 700, 499 N.W.2d 152 (1993).  "[C]onstitutional provisions for the security of person and property should be liberally construed."  *Mapp v. Ohio*, 367 U.S. 643, 647 (1961) (citation

omitted). This is because "[i]t is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Schneckloth v. Bustamonte*, 412 U.S. 218, 229 (1973) (citation omitted).

## II.    The officer requested consent to administer the PBT.

¶20    There is no dispute that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *State v. Popke*, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569. There is also no dispute that the taking of a person's breath is a seizure under the Fourth Amendment. *Skinner*, 489 U.S. at 616-17 ("Subjecting a person to a breathalyzer test, which generally requires the production of alveolar or 'deep lung' breath for chemical analysis, *see e.g.*, *California v. Trombetta*, 467 U.S. 479, 481 (1984), implicates similar concerns about bodily integrity and, like the blood-alcohol test we considered in *Schmerber* [*v. California*, 384 U.S. 757 (1966)], should also be deemed a search."); *see also* *County of Milwaukee v. Proegler*, 95 Wis. 2d 614, 623, 291 N.W.2d 608 (Ct. App. 1980) (recognizing that "the taking of a breath sample is a search and seizure within the meanings of the United States and Wisconsin Constitutions").

¶21    Searches and seizures that implicate the Fourth Amendment generally may not be undertaken without a warrant. *State v. Williams*, 2002 WI 94, ¶18, 255 Wis. 2d 1, 646 N.W.2d 834. But "[a] 'search authorized by consent is wholly valid' under the Fourth Amendment" and is "not in any general sense constitutionally suspect." *Id.*, ¶19 (quoting *Schneckloth*, 412 U.S. at 222). "The

State bears the burden of proving [by clear and convincing evidence] that consent was given freely and voluntarily." ***State v. Artic***, 2010 WI 83, ¶32, 327 Wis. 2d 392, 786 N.W.2d 430. Consent may not be obtained through actual or implied duress or coercion. ***Holt v. State***, 17 Wis. 2d 468, 477, 117 N.W.2d 626 (1962). Moreover, the State must show "more than acquiescence to a claim of lawful authority." ***Bumper v. North Carolina***, 391 U.S. 543, 548-49 (1968).

¶22 Wisconsin has also established a statutory scheme to allow law enforcement to obtain samples of breath. An officer may request a person to take a preliminary breath test if the officer has probable cause to believe that the person has committed an impaired driving offense. WIS. STAT. § 343.303. This standard is greater than that required for an investigative stop but less than that required for arrest. ***County of Jefferson v. Renz***, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999).

¶23 The first question in this appeal is whether the officer requested the PBT from Schenian. The second question is whether Schenian freely and voluntarily consented. Here, the circuit court found that Hartman did not coerce Schenian and that the test was "voluntarily taken":

> The gentle continuation of the tests from the [standardized field sobriety tests] to the PBT in no way transforms the PBT to a test that is, or can be, forced.

¶24 Schenian does not dispute that he consented to the field sobriety tests. The State does not dispute that Hartman did not specifically ask if Schenian would consent to a preliminary breath test. The question then is whether Hartman's initial request for tests was sufficient to cover *both* the field sobriety tests and the preliminary breath test.

¶25 Hartman was pressed to clarify[4] precisely what he asked of Schenian. He referenced "tests," not a specific test, testifying that "[a]t the beginning of our contact after he exited the vehicle I asked him if he'd be willing to do tests for me. At that point he said yes so I carried on throughout the tests." The circuit court observed Hartman at the evidentiary hearing and found that his statement was a request for *all* of the pending tests, including the preliminary breath test. That finding must be upheld unless it is clearly erroneous.

¶26 This court agrees that in a perfect world, police officers would specifically ask "will you agree to take a preliminary breath test" to each person they have detained and are investigating. But, this is not a perfect world, and Hartman plainly testified that he asked Schenian not only if he would participate in tests, but if they could be done in a warmer location. Schenian freely and voluntarily agreed to undergo these "tests."

¶27 Given this support for the factual finding by the circuit court that there was a global request that covered the PBT as well as the other field sobriety tests, made with the benefit of observation of the witness, this court cannot determine that the finding is clearly erroneous. *See Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶11, 290 Wis. 2d 264, 714 N.W.2d 530 ("[T]his court defers to the circuit court's findings of fact unless they are unsupported by the record and are, therefore, clearly erroneous."). Even if the initial request from Hartman to Schenian were deemed limited to the field sobriety tests (standardized

---

[4] There was no body camera or other video available to definitively resolve this issue.

11

or otherwise) and not inclusive of the PBT, this court concludes there was probable cause for arrest, as discussed below.[5]

### III. Even without the PBT evidence, there was probable cause to arrest Schenian.

¶28    In evaluating whether probable cause to arrest exists in a scenario such as this, the court "must look to the totality of the circumstances to determine whether the 'arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe ... that the defendant was operating a motor vehicle while under the influence of an intoxicant.'" *State v. Babbitt*, 188 Wis. 2d 349, 356, 525 N.W.2d 102 (Ct. App. 1994) (alteration in original; quoting *State v. Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986)).  "The evidence must show that there is more than a possibility or suspicion that the defendant committed the offense."  *State v. Welsh*, 108 Wis. 2d 319, 329, 321 N.W.2d 245 (1982), *vacated on other grounds sub nom. Welsh v. Wisconsin*, 466 U.S. 740 (1984).

¶29    Contrary to Schenian's assertion of "sparse" factors, Hartman, an officer with significant experience in operating while intoxicated traffic stops,[6] outlined a series of facts that led him to determine that he had probable cause to

---

[5] Having concluded that there was voluntary and freely given consent to the entire battery of tests (the standardized field sobriety tests, the nonstandardized tests, and the PBT), this court need not address the State's argument that no consent is needed for a preliminary breath test as a search incident to arrest or Schenian's statutory construction discussion regarding the meaning of "request."  *See City of Waukesha v. Town Bd. of Town of Waukesha*, 198 Wis. 2d 592, 608, 543 N.W.2d 515 (Ct. App. 1995) (observing that this court need not decide other issues raised when one issue is dispositive of the appeal).

[6] *See State v. Wille*, 185 Wis. 2d 673, 683, 518 N.W.2d 325 (Ct. App. 1994) (police officer experience and training may be considered in probable cause determination).

arrest Schenian *even before* he administered the preliminary breath test. Hartman smelled a strong odor of intoxicants on Schenian's breath when he stepped out of his vehicle; despite Schenian's arguments to the contrary,[7] the odor of intoxicants is well established as a fact that can contribute to probable cause. *See, e.g., State v. Adell*, 2021 WI App 72, ¶23, 399 Wis. 2d 399, 966 N.W.2d 115; *State v. Reese*, 2014 WI App 27, ¶13, 353 Wis. 2d 266, 844 N.W.2d 396; *State v. Dunn*, 158 Wis. 2d 138, 144, 462 N.W.2d 538 (Ct. App. 1990).

¶30 Schenian's eyes were bloodshot and watery. *See Tullberg*, 359 Wis. 2d 421, ¶35 ("We reaffirm that a law enforcement officer may consider bloodshot and glassy eyes to be one of several indicators of intoxication, even though such eye descriptors may have an innocent explanation."). It was 2:30 a.m., after bars typically close. *See State v. Lange*, 2009 WI 49, ¶32, 317 Wis. 2d 383, 766 N.W.2d 551 (recognizing that the time of day or night is relevant for an OWI probable cause determination); *State v. Post*, 2007 WI 60, ¶36, 301 Wis. 2d 1, 733 N.W.2d 634 (noting that poor driving at "bar time" is significant and is another factor lending "further credence" to a suspicion of intoxicated driving). Schenian said he'd left a work Christmas party before spending time at a bar and admitted that he had consumed five beers on the evening in question.

¶31 Hartman observed six out of six possible clues on the HGN test taken by Schenian—the test Hartman considers to be most reliable because it

---

[7] Schenian cites to three unpublished cases in support of that assertion: *State v. Gonzalez*, No. 2013AP2585-CR, unpublished slip op. (WI App May 8, 2014); *State v. Meye*, No. 2010AP336-CR, unpublished slip op. (WI App July 14, 2010); and *County of Sauk v. Leon*, No. 2010AP1593, unpublished slip op. (WI App Nov. 24, 2010). Each case stands for the proposition that the odor of alcohol alone (either in the vehicle or on the driver's breath) is not enough to conjure reasonable suspicion of OWI. However, the odor of alcohol is not the only factor supporting probable cause here.

doesn't require physical motor skills and is almost "involuntary." *See State v. Hogan*, 2015 WI 76, ¶77, 364 Wis. 2d 167, 868 N.W.2d 124 (Ziegler, J., concurring) (recognizing that "poor performance on standard field sobriety tests would support a determination that there is probable cause to arrest someone" for operating while under the influence). While the HGN test was being administered, Schenian was swaying. In addition, Hartman observed vertical nystagmus in both of Schenian's eyes.

¶32 True, Schenian passed the walk-and-turn test and barely failed the one-leg stand test.[8] Hartman agreed that Schenian exhibited neither bad driving nor slurred speech and also agreed that fatigue could sometimes play a role in a positive HGN test. But law enforcement officers are not obligated to consider or account for innocent explanations for the observations they make under the totality of the circumstances. *See State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125 ("[A]n officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that favors probable cause."). Finally, quite candidly, Schenian said "no" when asked if he believed he should be driving.

¶33 The fact that Schenian did not show additional indicia of operating a motor vehicle while intoxicated does not negate the other indicia from which a reasonable officer could find probable cause to arrest. Probable cause requires only that, under the totality of the circumstances, a reasonable officer like Hartman would believe that Schenian was *probably* driving while under the influence. Each situation is unique and must be assessed on the factors present and known to

---

[8] Following testimony by Hartman and Polich, the circuit court determined that there were two clues observed on the one-leg stand test. Two clues is a fail.

the officer on the scene. *See* **State v. Mata**, 230 Wis. 2d 567, 572, 602 N.W.2d 158 (Ct. App. 1999).

¶34 "In a long line of cases, [the United States Supreme Court has] said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." **Virginia v. Moore**, 553 U.S. 164, 171 (2008). Taking all of these factors together, it is quite reasonable that Hartman had determined that he had probable cause to arrest Schenian *before* he administered the PBT. The circuit court's findings of fact and conclusions of law were not erroneous, because there was significantly more than a possibility or suspicion that Schenian had been and would continue to operate a motor vehicle while under the influence of an intoxicant when he was arrested.

## CONCLUSION

¶35 In summary, this court concludes that there was a proper request for the PBT and that Schenian voluntarily consented to that test. In addition, there was probable cause to arrest Schenian—even without the results from the PBT. In neither regard were any of Schenian's constitutional rights violated. Accordingly, the judgment is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

15