STATE of Wisconsin, Plaintiff-Respondent,

v.

Leneral Louis WILLIAMS, Defendant-Appellant.†

Court of Appeals

*No. 2009AP501–CR. Submitted on briefs November 3, 2009.
—Decided January 5, 2010*

2010 WI App 39

(Also reported in 781 N.W.2d 495.)

† Petition to Review denied 4/19/10. Abrahamson, C.J., dissents.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard L. Zaffiro*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Sarah K. Larson*, assistant attorney general.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Leneral Louis Williams appeals from a judgment entered after a jury found him guilty of one count of possession of a firearm by a felon, contrary to WIS. STAT. § 941.29(2) (2005–06)[1] and from a postconviction order denying his motion to reverse the trial court's denial of his motion to suppress. He further contends that the postconviction judge erred in deciding his motion without a hearing.[2] We reject Williams's assertions and affirm.[3]

### BACKGROUND

¶ 2. On March 19, 2006, Milwaukee Police Officers Dwain Monteilh and Matthew Kaltenbrun were

[1] All references to the Wisconsin Statutes are to the (2007–08) version unless otherwise indicated.

[2] The Honorable Joseph Wall denied Williams's motion to suppress; the Honorable Kevin E. Martens presided over Williams's trial and ordered the entry of judgment against Williams; and the Honorable Rebecca F. Dallet issued the decision and order denying Williams's postconviction motion.

[3] On an unrelated note, the court observes that documents 27 and 28 in the record do not appear to have any relationship to the instant proceedings. Rather, these items appear related to Milwaukee County Case No. 2006CF1650. We direct that, upon remittitur, the clerk of the circuit court shall ensure that these items are removed from this record and filed appropriately.

patrolling, in a marked squad car, the area around 16th Street and Locust Street in Milwaukee. The officers testified that the area was known by them to be a high drug trafficking area, receiving two or three drug complaints on any given day.

¶ 3. As the officers drove south on 16th Street, they observed a van parked on the northeast corner of 16th Street and Locust Street with a single individual, later identified as Williams, seated in the driver's seat. Both officers noted that the van did not have a front license plate. As they passed the van, they observed Williams exit the van and enter the convenience store on the corner. The officers continued their patrol.

¶ 4. After about five minutes, the officers returned to the corner and parked their squad car about a half block south of the van they had previously observed. Williams had returned to the van and was again sitting in the driver's seat. The officers observed Williams from their squad car for approximately ten minutes before they pulled their squad car behind the van.

¶ 5. After pulling the squad car behind the van, the officers turned on the squad car's spotlight because it was beginning to get dark. With the spotlight on, the officers were able to clearly see inside the van. Officer Monteilh, who was sitting in the passenger's side of the squad car, exited the squad car and approached the passenger's side of the van. Officer Kaltenbrun exited the squad car shortly after Officer Monteilh, and approached the driver's side of the van.

¶ 6. Officer Monteilh testified that, through the van's passenger's window, he saw Williams in the driver's seat of the van "go from a single still silhouette to a downward motion." Officer Monteilh then observed "a large center console that [Williams] moved and placed an object underneath." More specifically, Officer

Monteilh testified that he "remember[ed] [Williams] using his left hand to place an object on, because the right hand was on top. [The console] was very loose. So after [Williams] placed it under, he tried to like reposition it really fast." When he was asked the shape of that object, Officer Monteilh said, "Well, it wasn't like large, where you would have to have your hand open. It was an object where you could grip your fingers around." Officer Monteilh testified that after Williams placed the dark object underneath the center console "there was nothing in his hands." Officer Monteilh did not believe that Williams saw him at the passenger's side window because Williams appeared to be watching Officer Kaltenbrun approach the driver's side of the van.

¶ 7.  Concerned that the object Williams placed under the console was a gun, Officer Monteilh immediately walked around the rear of the van to the driver's side where Officer Kaltenbrun was standing and told Officer Kaltenbrun to have Williams step out of the van. Officer Kaltenbrun did so, and after Williams stepped out of the van, Officer Monteilh patted him down. Discovering nothing but money in the pat down, Officer Monteilh placed Williams in the back of the squad car while Officer Kaltenbrun searched the van.

¶ 8.  Officer Kaltenbrun immediately searched under the center console because that was where Officer Monteilh told him he had observed Williams place the dark object. He recovered a loaded firearm and what he believed to be cocaine, packaged in five individually wrapped corner-cuts. Officer Kaltenbrun described his search of the console and discovery of the weapon as follows:

> It had some wood trim on the top, like—wood like cup holders. It was maybe about a foot and a half high. It was fairly large. It was loose. It wasn't affixed to the floorboards, as it normally would have been.

465

. . .

> When I approached, I immediately tried moving the center console. I noticed that it wasn't affixed to the floorboards, and I believed I picked it up from the wood—the wooden cup holders on the top, and I was able to lift it directly up off the floor.

. . .

> When I lifted up the center console, I observed a black firearm and also a plastic baggie, which contained an off-white chunky, chalky substance that I believed to be cocaine.[4]

¶ 9.   Based on the officers' findings during the van search, Williams was charged in circuit court with one count of possession of a controlled substance, contrary to WIS. STAT. §§ 961.16(2)(b)1., 961.41(3g)(c), and 961.48 (2005–06), and one count of possession of a firearm by a felon, contrary to WIS. STAT. § 941.29(2) (2005–06). Williams filed a motion to suppress the evidence obtained in the search of his van, but his motion was denied following an evidentiary hearing. The case went on to trial, and a jury found Williams not guilty of drug possession (count 1) but guilty of being a felon in possession of a firearm (count 2). Judgment was entered accordingly.

¶ 10.   In April 2008, Williams filed notice of intent to pursue postconviction relief, and in January 2009, he filed a postconviction motion challenging the trial

---

[4] In his oral decision denying Williams's motion to suppress, Judge Wall noted that he found the officers' testimony particularly credible. He described Officer Monteilh's testimony as "refreshing" and "very, very, very credible," commending him for "not stretching, not adding, not elaborating." Judge Wall also stated that Officer Kaltenbrun was "very, very credible here too."

court's prior decision to deny his motion to suppress the evidence obtained during the van search and requesting a motion hearing. The motion was denied without a hearing. Williams appeals.

## STANDARD OF REVIEW

¶ 11. Williams appeals the circuit court's denial of his motion to suppress the evidence seized in the search of his van. " 'Whether evidence should be suppressed is a question of constitutional fact.' " *State v. Knapp*, 2005 WI 127, ¶ 19, 285 Wis. 2d 86, 700 N.W.2d 899 (citation omitted). A finding of constitutional fact consists of the circuit court's findings of historical fact, and its application of those historical facts to constitutional principles. See State v. Turner, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827 (1987). We review the former under the clearly erroneous standard and the latter *de novo. See id.*

## DISCUSSION

¶ 12. Williams argues that the loaded gun should be suppressed because the search of his van violates *Arizona v. Gant*, __ U.S. __, 129 S. Ct. 1710 (2009), and the police lacked reasonable articulable suspicion to justify their search. The State argues that this case is distinguishable from *Gant* because the search here was: (1) not incident to arrest; and, (2) was properly based on a *Terry* articulable suspicion of dangerousness, i.e., the presence of a weapon under the console. We agree with the State.

¶ 13. The Fourth Amendment prohibits warrantless searches unless they fall within one of the exceptions described by case law, such as the *Terry* investi-

gative stop. In *Terry v. Ohio*, 392 U.S. 1 (1968), the U.S. Supreme Court balanced the warrant requirement of the Fourth Amendment against the legitimate safety concerns of police officers. The Court concluded that although investigative stops are seizures within the meaning of the Fourth Amendment, in some circumstances, a police officer may conduct an investigative stop when an officer:

> has reason to believe that he [or she] is dealing with an armed and dangerous individual, regardless of whether [the officer] has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.

*Id.*, 392 U.S. at 27. Such a stop, however, must be based on more than an officer's "inchoate and unparticularized suspicion or 'hunch.' " *Id.* Rather, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion. *Id.* at 21.

¶ 14. The Supreme Court extended the *Terry* protective search for weapons to vehicles in *Michigan v. Long*, 463 U.S. 1032 (1983):

> These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, *reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.*

*Id.* at 1049 (emphasis added).

468

¶ 15. The Wisconsin Supreme Court adopted *Long*'s approval of protective searches of vehicle passenger compartments in *State v. Moretto*, 144 Wis. 2d 171, 423 N.W.2d 841 (1988):

> We conclude that the scope of a search for weapons under [WIS. STAT. §] 968.25 is not limited to the search of the person but may, in accordance with *Long*, encompass the search of the passenger compartment of the person's. vehicle where the officer 'reasonably suspects that he or another is in danger of physical injury.'

*Moretto*, 144 Wis. 2d at 177–78 (citation omitted).

¶ 16. The Fourth Amendment is not implicated until there has been a seizure. The Court in *Terry* described a seizure as "whenever a police officer accosts an individual and restrains his [or her] freedom to walk away." *Id.*, 392 U.S. at 16. Not every encounter with a law enforcement officer is a seizure within the meaning of the Fourth Amendment. *United States v. Mendenhall*, 446 U.S. 544, 552 (1980); *see also State v. Williams*, 2002 WI 94, ¶ 4, 255 Wis. 2d 1, 646 N.W.2d 834 (" '[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " (citation omitted)).

¶ 17. Here, Williams seems to argue that the police performed an improper *Terry* stop on Williams's van. We disagree. The undisputed facts are that the officers did not stop Williams's van. It was already stopped and sitting at the corner on a public street. After driving past the van once and coming back around to it after a short patrol of the area, the police observed it was still there. They saw that it had no front license

plate. It was then that the police decided to approach the van driver. They turned their spotlight on the van and approached it on each side.

■

¶ 18. We assume that Williams is arguing, in the alternative, that the police officers seized him within the meaning of the Fourth Amendment when they directed the squad car's spotlight on his van. We need not decide, however, whether a reasonable person would have felt free to leave after a police squad's spotlight was directed at his or her vehicle, because even if we assume, without deciding, that a reasonable person would have felt restrained by the spotlight, the officers here were nonetheless justified in approaching the van based on their observation of the missing front license plate,[5] a violation of Wis. Stat. §§ 341.12(1) and 341.15(1).[6] *See State v. Griffin*, 183 Wis. 2d 327, 329,

---

[5] There was some evidence presented during trial that the van also may have been missing its rear license plate, but that evidence was not presented during the evidentiary hearing on Williams's motion to suppress and we do not consider it on appeal. "When reviewing an order on a motion to suppress evidence, an appellate court may take into account the evidence at the trial, as well as the evidence at the suppression hearing." *State v. Griffin*, 126 Wis. 2d 183, 198, 376 N.W.2d 62, 69 (Ct. App. 1985).

[6] The 2007–08 version of each statute are not materially different from those versions in effect at the time the officers approached Williams's vehicle.

Wisconsin Stat. § 341.12(1) states:

The department upon registering a vehicle pursuant to [Wis. Stat. §§ 341.25 or 341.30 shall issue and deliver prepaid to the applicant 2 registration plates for an automobile, motor truck, motor bus, school bus, motor home, or dual purpose motor home and one plate for other vehicles. The department upon registering a ve-

470

331–33, 515 N.W.2d 535 (Ct. App. 1994) (holding that a dealer-printed "license applied for" placard in the back window of a vehicle provided "reasonable suspicion" that the vehicle's operator was violating § 341.15). Because the officers had an objectively reasonable reason to approach the van—to investigate the missing license plate—Officer Monteilh was lawfully situated when he observed Williams inside the van.

¶ 19. Officer Monteilh testified as to his observations of Williams through the van window. We note that the circuit court found both officers' testimony credible and made findings of historical fact based on their version of events. On review, we affirm the circuit court's findings of fact and credibility unless they are clearly erroneous. *See Knapp*, 285 Wis. 2d 86, ¶ 19. Here, we conclude that the circuit court's findings and credibility determination are supported by the record.

¶ 20. Officer Monteilh testified that he approached the van on the passenger's side while Officer Kaltenbrun approached the driver's side. From the passenger's side of the van, Officer Monteilh was five feet from the van driver, Williams, and had a clear view of Williams hiding a large, dark object under the center console. He described the object as one that Williams could grasp by placing his fingers around it. He saw Williams lift up the center console (which is normally attached to the floor), place the object underneath it and replace the console. He then observed Williams's hand come up empty. Based on those observations, the fact that it was getting dark

hicle pursuant to any other section shall issue one plate unless the department determines that 2 plates will better serve the interests of law enforcement.

Wisconsin Stat. § 341.15(1) states, in pertinent part, "[w]henever 2 registration plates are issued for a vehicle, one plate shall be attached to the front and one to the rear of the vehicle."

and the fact that they were in a known high drug trafficking area, Officer Monteilh believed that the object Williams placed under the console was a gun. Accordingly, he immediately walked around to the driver's side of the van to tell Officer Kaltenbrun that he suspected there was a gun under the console and to ask Officer Kaltenbrun to direct Williams to step out of the van.

■■■

¶ 21. When the police officers asked Williams to exit the van a seizure certainly occurred. The *Terry* test as to whether the seizure is lawful is an objective one: "whether a reasonably prudent [officer] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." *Id.*, 392 U.S. at 27. In determining what facts are sufficient to authorize police to stop a person, "the totality of the circumstances—the whole picture—must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417 (1981); *see also State v. Allen*, 226 Wis. 2d 66, 74, 593 N.W.2d 504 (Ct. App. 1999) ("Determining whether there was reasonable suspicion requires us to consider the totality of the circumstances."). Pursuant to *Terry* and *Long*, Officers Monteilh and Kaltenbrun were justified in ordering Williams out of the van based upon the totality of the circumstances. Officer Monteilh had seen Williams hiding a large, dark object under the van's center console. The object was of a size that Williams could get his fingers around. He was putting it under a center console that normally would be attached to the van floor. It was dark and in an area from which there were at least two drug complaints a day. Under the totality of the circumstances, it was reasonable for the police officers to have a suspicion of a weapon and potential danger. Their subsequent request that Williams exit the car was reasonable to control the danger.

472

¶ 22.   Nevertheless, Williams argues that the console search is prohibited by *Gant*. In *Gant*, the United States Supreme Court addressed the development of the law on vehicle passenger compartment searches. The Court held that in a search incident to an arrest, an officer may only search that area within the " 'immediate control' " of the arrestee, "construing that phrase to mean the area from within which [the arrestee] might gain possession of a weapon or destructible evidence." *Gant*, 129 S. Ct. at 1716 (citation omitted). Gant was arrested for an open warrant, handcuffed and placed in the back of the squad car. *Id.* at 1714. The Court found that the facts in *Gant* presented no legitimate concern for an officer's safety or for destruction of the evidence because Gant was handcuffed, arrested and would not be returning to the car; consequently, there was no reason to believe that Gant would gain possession of a weapon. *Id.*

¶ 23.   Unlike Gant, Williams was not under arrest when the officers asked Williams to exit the car. The officers only had a reasonable suspicion of the presence of a firearm and, at best, would be able to issue Williams a ticket for a license plate violation. Therefore, there was a distinct possibility that Williams would return to the van. "In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed." *Id.* at 1724 (Scalia, J., concurring). Because Williams was not under arrest, the officers had an immediate safety interest in verifying that Williams did not have a gun or other weapon under his immediate control. Therefore, the search of Williams's console is not prohibited by *Gant*.

¶ 24.   The second reason that *Gant* does not apply here is that *Gant* did not eliminate the *Terry* exception to

the Fourth Amendment and the search of Williams's van is justified under *Terry*, as we concluded above.[7] The holding in *Gant* is limited to the search incident to arrest exception. The Court in *Gant* expressly left intact the other exceptions to the Fourth Amendment warrant requirement, such as *Terry*. In *Gant*, the Court specifically preserved the vehicle passenger compartment search when justified by reasonable suspicion under *Terry* and *Long*:

> Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. For instance, [*Long*, 463 U.S. 1032], permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is 'dangerous' and might access the vehicle to 'gain immediate control of weapons.' " [*Id.* at 1049 (citing *Terry*, 392 U.S. at 21)].

*Gant*, 129 S. Ct. at 1721.

¶ 25.    There was no claim in *Gant* of a lawful *Terry* search. Here, unlike in *Gant*, the intrusion is justified on the *Terry* exception to the warrant requirement. The police had a reasonable suspicion that Williams was dangerous and might gain immediate control of the weapon if returned to his vehicle.

██

¶ 26.    Williams makes a final undeveloped argument, without citation to the record, that the evidence should be suppressed because the officers' stated reason

---

[7] We recently held in *State v. Bailey*, 2009 WI App 140, 321 Wis. 2d 350, 773 N.W.2d 488, that a vehicle search incident to a stop for a minor traffic violation was valid under *Terry v. Ohio*, 392 U.S. 1 (1968) and *Michigan v. Long*, 463 U.S. 1032 (1983), and that *Arizona v. Gant*, __ U.S. __, 129 S. Ct. 1710 (2009) did not apply because the search was not incident to an arrest.

for approaching his van—the missing license plate—was pretextual. Besides the lack of support for this claim in the record, it is well-established law in Wisconsin that the subjective intent of the officers in performing a search plays no role in Fourth Amendment review, provided that there is a proper legal basis to justify the intrusion. *See State v. Baudhuin*, 141 Wis. 2d 642, 651, 416 N.W.2d 60 (1987) ("The officer's subjective intent does not alone render a search or seizure of an automobile or its occupants illegal, as long as there were objective facts that would have supported a correct legal theory to be applied and as long as there existed articulable facts fitting the traffic law violation."). Here, there was a lawful *Terry* basis for the intrusion as we have concluded above, so any scrutiny of the officers' subjective motives (even if there was support in the record) is unwarranted.

¶ 27. Finally, Williams alleges that the postconviction court erred in denying his motion without an evidentiary hearing. Our standard of review was set forth in *State v. Allen*, 2004 WI 106, 274 Wis. 2d 568, 682 N.W.2d 433, as follows:

> Whether a defendant's postconviction motion alleges sufficient facts to entitle the defendant to a hearing for the relief requested is a mixed standard of review. First, we determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief. This is a question of law that we review de novo. [*State v.*] *Bentley*, 201 Wis. 2d [303,] 309–10, [548 N.W.2d 50 (1996)]. If the motion raises such facts, the circuit court must hold an evidentiary hearing. *Id.* at 310; *Nelson v. State*, 54 Wis. 2d 489, 497, 195 N.W.2d 629 (1972). However, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is

not entitled to relief, the circuit court has the discretion to grant or deny a hearing. *Bentley*, 201 Wis. 2d at 310–11; *Nelson*, 54 Wis. 2d at 497–98. We require the circuit court "to form its independent judgment after a review of the record and pleadings and to support its decision by written opinion." *Nelson*, 54 Wis. 2d at 498. *See Bentley*, 201 Wis. 2d at 318–19 (quoting the same). We review a circuit court's discretionary decisions under the deferential erroneous exercise of discretion standard. *In re the Commitment of Franklin*, 2004 WI 38, ¶ 6, 270 Wis. 2d 271, 677 N.W.2d 276; *Bentley*, 201 Wis. 2d at 311.

*Allen*, 274 Wis. 2d 568, ¶ 9.

■

¶ 28.   When challenging the trial court's denial of his motion to suppress before the postconviction court, Williams did not allege facts that, if proven true, would entitle him to relief. Instead, he argued that the trial court inaccurately applied the law to the facts on the record. Because he did not raise a question of fact and because the record demonstrates that he is not entitled to relief, the postconviction court did not err in denying his motion without an evidentiary hearing.

*By the Court.*—Judgment and order affirmed.