COURT OF APPEALS
DECISION
DATED AND FILED

September 9, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP2450-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2016CF5564**

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JUSTIN JACKSON,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  DENNIS R. CIMPL, Judge.  *Reversed and cause remanded with directions*.

Before Blanchard, Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Based on guilty pleas, Justin Jackson was convicted of possession of a firearm by a felon and threatening a law enforcement officer.  He appeals the judgment of conviction and the order denying a motion for postconviction relief.  In his postconviction motion, Jackson contended that he received ineffective assistance of counsel when his trial counsel failed to inform him, before he decided to enter the pleas, that he had a potentially meritorious motion to suppress evidence.  Following a *Machner* hearing, the circuit court denied the motion based on a determination that trial counsel did not perform deficiently in failing to recommend that Jackson pursue a suppression motion.[1]  We agree with Jackson that trial counsel provided ineffective assistance on the potential suppression issue.  Accordingly, we reverse the order denying postconviction relief, and direct that the circuit court hold the suppression hearing that Jackson now seeks.

## BACKGROUND

¶2    The criminal complaint charged that on December 8, 2016, in West Allis, Jackson possessed a firearm after having been convicted of a felony, in violation of WIS. STAT. § 941.29(1m)(a) (2017-18), and intentionally threatened to cause bodily harm to a law enforcement officer, in violation of WIS. STAT. § 940.203(2).[2]  The complaint alleged in pertinent part that:  Jackson was pulled over in a traffic stop; he was placed under arrest on a warrant; and in a search of the car police discovered a loaded pistol.  Jackson did not move to suppress evidence obtained as a result of the search of his vehicle.

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶3     In April 2017, Jackson entered pleas of guilty to both counts and, at the same hearing, was sentenced to concurrent sentences of two and one-half years of initial confinement and two and one-half years of extended supervision, to be served consecutively to a revocation sentence in a separate case.

¶4     In June 2018, Jackson filed a motion for postconviction relief. Jackson alleged that his trial counsel had "rendered constitutionally ineffective assistance by failing to file a suppression motion challenging the search of the car." The motion attached a report by an officer summarizing the stop, arrest, and search. Jackson relied on the report as the factual basis to request a *Machner* hearing and a suppression hearing. The State's response also relied on the same police report for relevant allegations of fact.

¶5     The circuit court held a *Machner* hearing in November 2018, at which the two witnesses were trial counsel and Jackson. The parties and the circuit court all appeared to rely entirely on the police report for relevant allegations of fact regarding the stop, the arrest, and the search at the *Machner* hearing, and neither side offered any evidence regarding those events that was different from or additional to the allegations contained in the report. Notably, for reasons we discuss below, the State has at no point disputed that, as the report reflects, Jackson was arrested and secured in the back of a squad car before the car search began.

¶6     We now summarize pertinent portions of the police report in detail.

*Police Report*

¶7     According to the report, at 11:50 p.m. on a Thursday night the officer pulled over a car, driven by Jackson, for traveling approximately forty miles per

3

hour in a thirty miles per hour zone. After Jackson stopped his car, the officer saw Jackson

> reaching around inside the vehicle. It appeared to me from behind the vehicle, with my patrol squad car spot light illuminat[ing] … the rear of the vehicle that [Jackson] was moving very directly towards the passenger side of the vehicle as though concealing something and trying to conceal his motions beneath my field of vision. I have made thousands of traffic stops and observed movements from driver[]s of numerous different types of vehicles for such things [as] registrations and ID cards prior to my approaching the vehicle. I am able to say that these movements were different[;] there was a furtive nature to the movements that made it appear that Jackson was attempting to conceal something and conceal his motions by crouching down and moving more quickly than normal.
>
> I immediately drew my firearm and began to order the driver to stop moving around and to show me his hands.

Jackson placed his hands outside the front driver's side window. The officer asked Jackson to step out of the car. Jackson responded "that he did not wish to step out of the vehicle and said that he did not consent to a search of his vehicle." The officer then told Jackson that he "needed to step out of the vehicle because I was not sure what he was reaching for just prior to my approaching the vehicle and making commands."

¶8    The officer further stated in the report that he opened the driver's door of the car, at which time

> Jackson began to step out of the vehicle. As Jackson was standing in the threshold of the front driver's door I asked him to step to the rear of the vehicle and [I] grabbed his arm to escort him to the rear of the vehicle. Jackson said no and I felt that he was displaying resistive tension in his arm where I was holding on to it. I accessed my conductive electrical weapon … and began to draw it as he finally began to step to the rear of the vehicle. Jackson came to the rear of the vehicle and consented to a search of his person.

4

Jackson explained to the officer that his fiancé owned the car. The officer "asked Jackson to sit on the curb" and then, after he apparently complied, the officer asked Jackson if he was "on paper for anything." Jackson responded that he was "on parole."

¶9 The officer further stated in the report that he obtained identification information from Jackson and learned by running this information through the police system that Jackson had an outstanding warrant. The officer arrested Jackson on that warrant, and placed him in the rear of the squad car. Jackson said that "the warrant was a mistake." The officer explained to Jackson that the officer "would double check the warrant [through] the computer and that [Jackson] needed to get into the squad car." The officer had to tell Jackson "numerous times to place his feet inside the squad car before he would comply" sufficiently for the officer to safely close the squad door. The officer confirmed the active warrant through various data systems, and saw that Jackson was "on felony parole."[3]

¶10 The officer further stated in the report that, with Jackson secured in the squad car, the officer searched the car and found a loaded semiautomatic handgun in the glove compartment. The officer reported that, "from the movements [of Jackson] that I observed" immediately following the stop, "it was reasonable for me to believe" that Jackson "was making furtive movements reaching towards" the glove compartment immediately following the stop.

¶11 The police report addresses other events, which allegedly occurred only after the search of the car began or after the search ended, and which do not

---

[3] However, the report further reflects that, later, the officer asked a dispatch operator to confirm the warrant and "learned that the warrant entry [that the officer] observed attached to the name of Jackson was kept in the system through error."

have any bearing on the arguments presented by the parties in this appeal. For context we note that the report alleges that the officer heard Jackson violently kick the squad car and that Jackson threatened law enforcement. But, so far as is alleged in the only report referenced by the parties, all of this alleged activity began after the officer started searching the car.[4]

## *Machner* Hearing

¶12 Jackson testified at the ***Machner*** hearing that he had no memory of trial counsel discussing with him the possibility of filing a motion to suppress evidence. He further testified that, if trial counsel had told him that she could file a potentially successful suppression motion, then he would have pursued that option, and also that he entered guilty pleas only because he believed that he did not have any other "choice but to take the [plea] deal" offered by the prosecution.

¶13 Trial counsel testified that she concluded while representing Jackson that he did not have a potentially successful motion to challenge the search of the car for the following reasons, and that she discussed her reasoning with Jackson before he decided to enter guilty pleas. First, under the doctrine of inevitable discovery, the discovery of the gun fit an exception to warrant requirement because the car would have inevitably been towed and lawfully searched by police. Second, ***Arizona v. Gant***, 556 U.S. 332 (2009), could not apply to support a suppression motion here, because, in the words of trial counsel, "the officer thought that there was a valid warrant [for Jackson] at the time that the search was conducted and [the

---

[4] The State makes no argument that trial counsel could have provided deficient performance in failing to identify a potential winning suppression argument as to only one of the counts of conviction (felon in possession or threatening a law enforcement officer) and not the other.

officer] was operating on" the belief that he could validly arrest Jackson on a warrant.[5] Third, WIS. STAT. § 302.113(7r) permits law enforcement to search any property under the control of a person on extended supervision based on a reasonable belief that he or she has engaged in criminal activity or violated a condition of supervision, and the furtive movements allegedly observed by the officer might have triggered § 302.113(7r) because the officer knew that Jackson was on extended supervision.[6]

### *Circuit Court Ruling*

¶14     The circuit court concluded that trial counsel in her testimony "correctly analyzed" the law to conclude that Jackson "would not prevail on a motion to suppress." The court suggested that it believed that trial counsel had reasonably counseled Jackson by relying on all three of the points she made in her

---

[5] As we address in more detail below in responding to an argument by the State, this is a non sequitur. The test in ***Arizona v. Gant***, 556 U.S. 332 (2009), is not concerned with the validity of an arrest of a vehicle occupant. ***Gant*** holds that police may search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search or if the vehicle contains evidence of the offense resulting in the arrest. *Id.* at 343. Trial counsel attempted to explain her reasoning on this topic as being related to the search incident to arrest doctrine, which is in fact one focus in ***Gant***, but she did not provide any recognizable interpretation of ***Gant*** as potentially related to the alleged facts here.

While on the topic of ***Gant***, we note for context that our supreme court has adopted "the reasoning in ***Gant*** as the proper reading of Article 1, Section 11 of the Wisconsin Constitution (protecting against unreasonable searches and seizures)," so that under both the state and federal constitutions the vehicular search incident to arrest rule permits a search "only if the person arrested is unsecured and within reaching distance of the passenger compartment at the time of the search," and when it is "'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *See* ***State v. Dearborn***, 2010 WI 84, ¶27, 327 Wis. 2d 252, 786 N.W.2d 97 (citation omitted).

[6] At one point in her testimony, trial counsel asserted a qualification to her answer on the topic of WIS. STAT. § 302.113(7r). She testified to the understanding that § 302.113(7r) "by itself" did not give the officer here authority to search the car. However, she did not explain what she meant by this.

testimony at the *Machner* hearing and denied the postconviction motion on that basis.

## DISCUSSION

¶15  Jackson argues the trial counsel was ineffective for failing to challenge the warrantless search of his car and that he is entitled to a suppression hearing.  We agree that Jackson has shown that trial counsel provided ineffective assistance and that as a consequence Jackson's case must be remanded for a suppression hearing.

¶16  The pertinent ineffective assistance of counsel standards are well established:

> "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel."  The same right is guaranteed under Article I, Section 7 of the Wisconsin Constitution.  Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact.  The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo.  To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial.  If the defendant fails to satisfy either prong, we need not consider the other.

*State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (citations omitted).

¶17  Also firmly established are the following pertinent Fourth Amendment standards:

> The Fourth Amendment protects against "unreasonable searches and seizures" by the government.

> Seizures conducted without a warrant are unreasonable unless they fall within a recognized exception to the warrant requirement. The State bears the burden to prove that one of the exceptions to the warrant requirement applies.

*State v. Abbott*, 2020 WI App 25, ¶12, 392 Wis. 2d 232, 944 N.W.2d 8 (citations omitted). "Unless an exception applies, a search without a warrant is *per se* unreasonable." *State v. Smiter*, 2011 WI App 15, ¶10, 331 Wis. 2d 431, 793 N.W.2d 920 (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). As is evident from the background summary above, the State does not contend that the officer had a warrant to search the car when he was pulled over for allegedly speeding.

¶18    Consistent with the standards we have just quoted, we now address in turn deficient performance and prejudice before ending on remedies.

## I.    DEFICIENT PERFORMANCE

¶19    The deficient performance that Jackson must prove is addressed under the following pertinent standards:

> Whether trial counsel performed deficiently is a question of law we review de novo. To establish that counsel's performance was deficient, the defendant must show that it fell below "an objective standard of reasonableness." In general, there is a strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance."

*Breitzman*, 378 Wis. 2d 431, ¶38 (citations omitted).

¶20    Jackson contends that trial counsel performed deficiently because she relied on misunderstandings of the law in counseling him about his likely prospects at a suppression hearing. The State argues that trial counsel's performance was not deficient because she gave him advice that was, in one particular part, correct and that in any case her counsel on the potential suppression motion issue did not fall

9

below "an objective standard of reasonableness" under the deficiency standards referenced above. We conclude that trial counsel failed to provide correct advice and that this was deficient performance.

¶21 On appeal, the State expressly disavows two potential grounds to justify the car search referenced by trial counsel in her *Machner* hearing testimony and by the circuit court in denying the postconviction motion: the search incident to arrest doctrine and the inevitable discovery doctrine. In fact, on the search incident to arrest topic, the State's brief on appeal fails even to mention *Gant* or allude in any way to the holding of that case that police may search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search or the vehicle contains evidence of the offense resulting in the arrest.[7] *See Gant*, 556 U.S. at 343.

¶22 The State's only developed argument is based on the protective search exception to the Fourth Amendment. That is, the State argues that trial counsel did not perform deficiently because she correctly told Jackson that the State would be able to show at a suppression hearing that the officer had reasonable suspicion based on specific and articulable facts that Jackson was dangerous and might gain immediate control of a weapon, justifying a protective search under a recognized Fourth Amendment exception. *See State v. Johnson*, 2007 WI 32, ¶24, 299 Wis. 2d 675, 729 N.W.2d 182 (police may conduct a protective search of the passenger compartment of a vehicle during a traffic stop if the officer reasonably believes that

---

[7] The State here does not argue that the offense providing the basis for arrest here (a warrant based on unpaid court fees) supplied the basis for the officer to believe that the car contained relevant evidence justifying a warrantless vehicle search under *Gant*. Trial counsel took the position in her *Machner* hearing testimony that she could only "speculat[e]" about whether the officer might have found evidence of failure to pay a court fee in the car.

the suspect is dangerous and may gain immediate control of weapons in the passenger compartment); citing *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (applying the principles of *Terry v. Ohio*, 392 U.S. 1 (1968), to the validity of protective searches executed during a roadside stop).[8]

¶23 This court has had the opportunity to summarize the applicable standards as follows:

> Whether a law-enforcement officer may "conduct a protective search" of a car is "decide[d] on a case-by-case basis, evaluating the totality of the circumstances, whether an officer had reasonable suspicion to justify a protective search in a particular case." *State v. Buchanan*, 2011 WI 49, ¶9, 334 Wis. 2d 379, … 799 N.W.2d 775 … (quotation marks and quoted source omitted). "[R]easonable suspicion" is a "commonsense" concept that implicates "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quotation marks and quoted sources omitted). Thus, there must be a balance between danger and privacy, and when law-enforcement officers make a traffic stop, the danger is significant. *See Buchanan*, [334 Wis. 2d 379, ¶18] ("As we have frequently noted, traffic stops are dangerous for law enforcement, and permitting a limited search is a reasonable way to balance the competing interests involved."); *State v. Denk*, 2008 WI 130, ¶36, 315 Wis. 2d 5, 19, 758 N.W.2d 775 … ("Warrantless searches are presumed to be unconstitutional. Our jurisprudence has established several exceptions to this constitutional rule, based on a balance between the intrusion on the individual's Fourth Amendment interests and the government's promotion of its legitimate interests.") (internal citation omitted).

---

[8] We question whether trial counsel clearly testified at the *Machner* hearing that she understood and conveyed to Jackson that the protective search doctrine was a basis for denial of a potential motion to suppress. However, Jackson does not make this point. For purposes of resolving this appeal we assume without deciding that trial counsel's performance was not deficient for the sole reason that she failed to identify this as an issue while representing Jackson; that is, we assume that in her testimony she did identify the protective search doctrine as a basis to sustain the search and that she provided that advice to Jackson before he entered his pleas of guilty.

*State v. Sutton*, 2012 WI App 7, ¶7, 338 Wis. 2d 338, 808 N.W.2d 411 (2011).

¶24 The problem with the State's argument is that the need to strike a "balance" described in *Sutton* between "danger" and "privacy" plainly could not apply here for a simple reason. On the facts assumed by the parties and the circuit court, Jackson was under arrest and sitting in the back of the squad car before the search began. Therefore he could not return to the car to gain control of any weapon that might be there. "[T]he sole justification [for] a protective search under *Terry* [*v. Ohio*, 392 U.S. 1 (1968),] is the protection of the police officers and others nearby." *Johnson*, 299 Wis. 2d 675, ¶37 n.13. It cannot be argued that the search of the car here was necessary to protect anyone under the assumed facts.

¶25 We made a similar point in *Sutton* itself. There, the protective search rationale applied in part because, at the time of the search, the driver of a vehicle who had been stopped for a traffic violation had not been arrested and therefore could "freely" obtain a weapon from the van. *Sutton*, 338 Wis. 2d 338, ¶¶2, 8. Put differently, under the reasoning of *Sutton*, the significant potential dangers that generally exist for law enforcement when they conduct traffic stops based on occupants possibly accessing weapons in vehicles, which is emphasized in cases such as *Buchanan*, evaporates when all occupants are unable to access the vehicle.

¶26 This was essentially the same point we made in *State v. Williams*, 2010 WI App 39, ¶23, 323 Wis. 2d 460, 781 N.W.2d 495 ("*Williams 2010*" to distinguish a separate case with the same name referenced below). As we noted in *Sutton*, in *Williams 2010* we determined that a warrantless search of a vehicle was justified by officer safety because there was a distinct possibility that Williams would return to the vehicle. *See Sutton*, 338 Wis. 2d 338, ¶8. In contrast to *Sutton* and *Williams 2010*, the facts on this topic here resemble those in *Gant*, in which the

12

driver's car was searched without a warrant or consent after he had been arrested, handcuffed, and locked in the back of a patrol car. *See **Gant***, 556 U.S. at 335.

¶27    The State cites to plainly inapplicable case law, such as the ***Long*** case itself, which generally extended the rationale of ***Terry*** to protective searches during automobile stops. *See **Long***, 463 U.S. at 1046. Under such precedent as ***Long***, police have authority to search a vehicle passenger compartment when they have reasonable suspicion that an individual is "dangerous" and might return to the vehicle to "gain immediate control of weapons." *See **id.*** at 1049. ***Gant*** confirms that ***Long***, while still good law for that proposition, does not apply when the vehicle occupant is under arrest and cannot access the vehicle. *See **Gant***, 556 U.S. at 346-47 (distinguishing ***Long***).[9]

¶28    In some situations, application of these rules may be difficult because there is ambiguity about whether a recent vehicle occupant could have regained access to the vehicle to obtain a weapon. But not so on the facts assumed by the parties here. After a routine stop for speeding 10 miles over the limit, the only occupant of the vehicle was arrested and securely detained based on what the officer then reasonably believed was a valid outstanding warrant. Stated in terms of the legal test, under the totality of the circumstances, the officer here could not have had

---

[9] The facts of ***Michigan v. Long***, 463 U.S. 1032 (1983), readily illustrate the difference between the situations in which recent vehicle occupants have the ability to return to the vehicle and possibly access a weapon at the time of the search and those in which they lack that ability. After Long was pulled over, he met officers at the rear of his vehicle. *See id.* at 1035-36. Officers observed a large knife through the open front passenger door of his vehicle. *Id.* Long was not under arrest at the time of the search. *Id.* In explaining its rationale, the court in ***Long*** explained that, "[j]ust as" in ***Terry***, in which "a ***Terry*** suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a ***Terry*** suspect in Long's position break away from police control and retrieve a weapon from his automobile." *Id.* at 1051.

reasonable suspicion that the arrested and squad-car-detained Jackson may have been able to gain immediate control of a weapon from the car. Thus the officer could not have been justified in carrying out a protective search to ensure officer safety.

¶29 This defeats the only argument clearly advanced by the State on appeal. While discussing facts pertinent to its protective search argument, the State makes a passing reference to WIS. STAT. § 302.113(7r).[10] If the State intends to make an argument based on § 302.113(7r) it is undeveloped and we do not address it further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶30 Both sides give considerable attention to *Johnson*, in which our supreme court held that the behavior of the occupant of a stopped vehicle, which police testified was a signal to them of the possibly dangerous concealment of a weapon or contraband, was not sufficient to justify a protective search. *See Johnson*, 299 Wis. 2d 675, ¶¶2-7, 34-47. The police in *Johnson* could not lawfully conduct a protective search of a stopped car because they lacked "'specific and articulable facts which, taken together with rational inferences from those facts,

---

[10] WISCONSIN STAT. § 302.113(7r) is located within the chapter addressing prisons, in the section addressing "[r]elease to extended supervision for felony offenders not serving life sentences," and states in its entirety:

> A person released under this section, his or her residence, and any property under his or her control may be searched by a law enforcement officer at any time during his or her period of supervision if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of release to extended supervision. Any search conducted pursuant to this subsection shall be conducted in a reasonable manner and may not be arbitrary, capricious, or harassing. A law enforcement officer who conducts a search pursuant to this subsection shall, as soon as practicable after the search, notify the department.

reasonably warrant that intrusion.'" *Id.*, ¶21 (quoting *Terry*, 392 U.S. at 21). However, we have explained why the State's argument based on the protective search exception has no starting point, and therefore all of this argument by the parties is irrelevant.

¶31     Summing up on the deficiency issue, Jackson has shown that his trial counsel was deficient in failing to provide him with a correct understanding of his opportunity, based on the assumed facts, to potentially prevail at a suppression hearing, relying on an argument that the State is not able to show that the warrantless search of the car was permitted under any recognized exception to the Fourth Amendment.[11]

## II.     PREJUDICE

¶32     The prejudice that Jackson must prove to establish ineffective assistance is addressed under the following standards:

> Whether any deficient performance was prejudicial is also a question of law we review de novo. To establish that deficient performance was prejudicial, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Breitzman*, 378 Wis. 2d 431, ¶39 (citations omitted).

---

[11] In a brief, pro forma argument, the State asserts, "[a]t the very least, counsel reasonably thought that a suppression motion would have been denied," and "[e]ven if [she] was incorrect," her thinking "was reasonable." We reject as undeveloped the apparent suggestion that either the pertinent law was unsettled or that trial counsel was, through no fault of her own, deprived of information that would have allowed her to give correct advice. We rely on law that was well settled at the time and there is no suggestion that counsel did not have the police report on which our analysis rests.

¶33    The State effectively concedes that, if trial counsel was deficient in failing to correctly analyze the potential suppression issue, then Jackson was prejudiced in failing to have the opportunity for a suppression hearing. The State argues only that a suppression motion would necessarily have been "meritless" on the assumed facts for reasons that we have rejected.

### III.    REMEDIES REQUIRED BY THIS APPEAL

¶34    Jackson requests that we reverse the order denying the postconviction motion and remand with directions that the circuit court hold a suppression hearing. We grant those requests.

¶35    The State does not pose any objection to a suppression hearing that we have not rejected. In particular, it does not raise any procedural or other objection to a suppression hearing in the event that we reject its arguments regarding ineffective assistance of trial counsel on the suppression issue. Accordingly, we remand for a suppression hearing and all ordinary proceedings to resolve the case that would follow a suppression hearing.

¶36    We emphasize again that, following the parties and the circuit court at the time of the *Machner* hearing, all of our discussion in this opinion has been based on the only allegations of fact in the record, namely, those contained in the police report attached to Jackson's postconviction motion. It will be for the circuit court at the suppression hearing to determine the range and types of evidence to be permitted and to resolve all arguments advanced by either side.

¶37    Whether suppression is required, and if so precisely what evidence must be suppressed, are issues that need to be litigated in the circuit court based on the evidence presented by the parties or agreed to by stipulation. Trial counsel

should have filed a suppression motion and, consistent with the legal principles that we apply above, the circuit court should have ordered a hearing on that motion. We also express no opinion about appropriate further remedies to follow in the event that evidence is suppressed following a suppression hearing, because that would be premature.

## CONCLUSION

¶38     For all of these reasons, we reverse the order denying the postconviction motion and remand with directions that the circuit court proceed to a suppression hearing.

*By the Court*.—Judgment and order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

17