**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 2, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2020AP588-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CM963

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KENDELL MARCEL WHITE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: ANDREW A. JONES, Judge. *Reversed, and cause remanded with directions.*

¶1 WHITE, J.[1] Kendell Marcel White appeals from a judgment of conviction for carrying a concealed weapon. White argues that the police

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2017-18). All references to the Wisconsin Statues are to the 2017-18 version unless otherwise noted.

Defendant-Appellant is not related to the Honorable Maxine A. White, who is assigned to this appeal.

unlawfully extended an investigatory traffic stop and conducted a warrantless search of his vehicle in violation of the Fourth Amendment. We agree that the search was unlawful and, therefore, reverse the judgment, and remand the cause with directions to grant White's motion to suppress evidence seized in the search.

## BACKGROUND

¶2 This matter arises out of White's arrest for carrying a concealed weapon, discovered in a traffic stop on February 28, 2018. White filed a suppression motion because he asserted that the police search was made without a warrant and in the absence of any legally recognized exception to the warrant requirements.

¶3 At the suppression hearing, Officer Donald Gaglione testified that "we observed a vehicle which was determined to be an Audi Q7. It was parked approximately two feet off the curb … with no visible plates displayed on the rear and darkly tinted windows." As the officers approached the car, a person, L.G., opened the passenger side door and sat inside the car. Ofc. Gaglione walked up to the driver's side and spoke with White, who was sitting in the driver's seat. Officer Andrew Schnell walked to the passenger's side of the vehicle. White informed the police that he had a temporary license plate in the back window. Officer Thomas Kotnik checked the window and found an expired Illinois temporary plate in the window.

¶4 Ofc. Gaglione testified that he explained to White that he "would like to have some type of form of paper VIN number with possibly an identifier to identify Mr. White as the owner of the vehicle." The officer testified that White said that "he recently purchased it but had not yet registered it." The defense counsel clarified the officer's requests:

>[Defense counsel:] At this point when you were speaking to Mr. White and you'd asked him for the VIN number, you hadn't checked to see the VIN number on the car yet.
>
>[Ofc. Gaglione:] That's correct.
>
>[Defense counsel:] So you didn't—you didn't have the VIN number?
>
>[Ofc. Gaglione:] No, I did not have the VIN number.
>
>[Defense counsel:] And he was unable to tell you off the top of his head what the VIN number to the car was.
>
>[Ofc. Gaglione:] Correct.
>
>[Defense counsel:] So instead of looking, you continued questioning him about this, right?
>
>[Ofc. Gaglione:] That's correct.

¶5     The police were on a general patrol at the time they noticed White's vehicle, which was missing a rear license plate. Ofc. Gaglione testified that the missing license plate raised a concern because vehicles that "don't have plates could either be unregistered autos or … used to facilitate some other type of crime." When questioned about this specific stop, Ofc. Gaglione testified as follows:

>[Defense counsel:] Had you received any reports of a stolen vehicle?
>
>[Officer Gaglione:] No.
>
>[Defense counsel:] Specifically this stolen—a stolen dark gray Audi Q7?
>
>[Officer Gaglione:] Not specifically for this vehicle, no.
>
>[Defense counsel:] And when you are on patrol, you were not—you were not looking for a stolen vehicle at all.

[Officer Gaglione:] As part of our patrol, we look for a variety of offenses, including stolen vehicles, suspicious autos, violent crime or suspicious activity.

[Defense counsel:] But you had no indication that this vehicle was stolen—

[Officer Gaglione:] No.

[Defense counsel:] —correct? And further, you had not received any calls or reports of Mr. White himself or Mr. White himself, correct?

[Officer Gaglione:] That's correct.

[Defense counsel:] And you had received no calls about a suspicious Audi Q7.

[Officer Gaglione:] Not that I recall.

¶6    Ofc. Gaglione asked White to step outside of the vehicle because White showed "excessive emotional attention" and verbal "argumentativeness," which combined with the dark window tint, raised a risk to safety in the officer's mind. After explaining to White the reasons for the stop—the missing license plate, the overly dark window tint, and being parked too far from the curb—Ofc. Gaglione went back to the driver's side of the vehicle to obtain the VIN number and to see any information identifying what state the vehicle was registered in or who the owner was.

¶7    Ofc. Gaglione testified that there was nothing in plain view that jumped to his attention that something could be illegal in the car, such as contraband, marijuana, illegal substances, weapons, or cartridges. The officer testified that "at no point" did he ask White for consent to search the vehicle. The officer acknowledged that White told him "again and again that he was the owner of the vehicle." The officer testified that he was not aware of any "point [when L.G.] indicate[d] that she owned the vehicle." Ofc. Gaglione testified that he only

4

briefly spoke to L.G. and he did not "ask [L.G.] any questions regarding ownership of the vehicle."

¶8      Ofc. Gaglione testified that he asked White to "step out" of the vehicle and he conducted a "pat down" frisk of White's person to check for weapons as a "safety check." While White was outside the vehicle, Ofc. Gaglione "checked the doorsill area for where the VIN number would be written" and he found it. The defense questioned the officer as follows:

> [Defense counsel:] Okay. So you—you could have, right, checked just both the VIN numbers in both [Wisconsin and Illinois].
>
> [Officer Gaglione:] That's correct. Could have.
>
> [Defense counsel:] Okay. But instead you went to the car and you asked [L.G.] to open the glove box.
>
> [Officer Gaglione:] I asked if she could check for a title.
>
> [Defense counsel:] Okay. And she did so.
>
> [Officer Gaglione:] She did.
>
> ….
>
> [Defense counsel:] Okay. And you didn't know at that point if she had told anyone else that she was the owner of this vehicle?
>
> [Officer Gaglione:] Not that I was aware of.
>
> [Defense counsel:] Okay. So she—she complied with your order.
>
> [Officer Gaglione:] I asked her a question. Not an order.
>
> [Defense counsel:] Okay. So she—but she complied?
>
> [Officer Gaglione:] She volunteered to open the glove box.

[Defense counsel:] And Officer Schnell was standing on the other side of her?

[Officer Gaglione:] That's correct.

[Defense counsel:] Right in front of the door?

[Officer Gaglione:] I believe so.

Ofc. Schnell spotted a Smith and Wesson .380 caliber handgun in the glovebox when it was opened. After photographing and securing the firearm, the police found documents from a local dealership identifying the vehicle and it had White's identifying information on it. When the police ran the VIN number, the results revealed that the vehicle was registered in New York, the registration had expired sometime in 2016, and White's name was not on the registration.

¶9      The circuit court[2] denied White's suppression motion. The circuit court found that there was reasonable suspicion for the traffic stop because (1) the "vehicle itself was parked approximately two feet from the curb" in violation of local ordinances (2) there was "no [license] plate on the rear of the car," and (3) the officer's suspicion "that the windows were tinted beyond what was allowed under the local ordinances." Although the circuit court acknowledged that White "said he owned the vehicle[;]" the court noted that White "wasn't able to provide any proof of purchase." The court concluded it was not unreasonable for the officer, in light of the expired Illinois temporary license plate in the back window, to wonder if White had the "right to drive" this vehicle or if it was "a stolen vehicle." The court concluded that Ofc. Gaglione "under the totality of the

---

[2] The suppression motion was heard and denied by the Honorable Dennis Flynn; we refer to him as the circuit court. The trial was conducted and White's sentence was imposed by the Honorable Andrew A. Jones; we refer to him as the trial court.

circumstances had no obligation to secure under the Fourth Amendment a search warrant before making an inquiry of [L.G.] or … before going into the vehicle itself to see what was in the glove box." The circuit court stated that Ofc. Gaglione took "entirely proper" actions because he "was focusing on his primary activity" of confirming "who owned the vehicle."

¶10     After a two-day jury trial, the jury found White guilty of carrying a concealed weapon. The trial court entered a judgment of conviction on carrying a concealed weapon in violation of WIS. STAT. § 941.23(2). The trial court stayed a sentence of time in the House of Corrections and imposed twelve months of probation. This appeal follows.

## DISCUSSION

¶11     White argues that the police unreasonably extended the investigatory stop and unlawfully searched his vehicle. He asserts that the police lacked probable cause to conduct the warrantless search and that the police had no reason to believe the passenger had actual or apparent authority over the vehicle to consent to the search. We conclude that the search was not reasonable; therefore, the evidence found in the search must be excluded.

¶12     The Fourth Amendment guarantees individual security "against unreasonable searches and seizures." U.S. CONST. amend. IV. "We apply a two-step standard of review to constitutional search and seizure inquiries." *State v. Matejka*, 2001 WI 5, ¶16, 241 Wis. 2d 52, 621 N.W.2d 891. "[W]e uphold a circuit court's factual findings unless clearly erroneous, but we independently determine whether those facts meet the constitutional standard." *State v. Samuel*, 2002 WI 34, ¶15, 252 Wis. 2d 26, 643 N.W.2d 423.

7

¶13    A traffic stop, "even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." *State v. Popke*, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569 (citations omitted).  "The 'mission' of a traffic stop includes: (1) addressing the traffic violation that warranted the stop; (2) conducting ordinary inquiries incident to the stop; and (3) taking negligibly burdensome precautions to ensure officer safety." *State v. Wright*, 2019 WI 45, ¶24, 386 Wis. 2d 495, 926 N.W.2d 157 (citations omitted).  "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).

¶14    "Searches conducted without a warrant are per se unreasonable under the Fourth Amendment to the United States Constitution." *Matejka*, 241 Wis. 2d 52, ¶17.  The State has the burden to prove by clear and convincing evidence that a warrantless search was reasonable and in compliance with the Fourth Amendment.  *State v. Kieffer*, 217 Wis. 2d 531, 541, 577 N.W.2d 352 (1998).  The police may conduct warrantless searches based upon a third-party's consent when the consent was "freely and voluntarily given" and the third-party had "actual or apparent authority over the place to be searched."  *State v. Wantland*, 2014 WI 58, ¶¶22-23, 355 Wis. 2d 135, 848 N.W.2d 810 (citations omitted).

¶15    White argues that the traffic stop was unlawfully extended after White informed the officer that he was the owner of the vehicle.  White does not challenge the reasonable suspicion underlying the stop nor does he challenge the police having him exit the vehicle during the stop.  Without deciding whether the stop was unreasonably extended after White informed the police he owned the vehicle, we instead consider the totality of circumstances of the search and seizure

8

and conclude that the warrantless search of the vehicle was unreasonable and unlawful.

¶16    The police search of White's vehicle does not fall under an exception to the prohibition on warrantless searches.[3]  *See Matejka*, 241 Wis. 2d 52, ¶19.    First, there was no probable cause that the vehicle was stolen or contained "evidence of a crime."  *See State v. Lefler*, 2013 WI App 22, ¶7, 346 Wis. 2d 220, 827 N.W.2d 650.  Ofc. Gaglione testified that he was not looking for a stolen Audi or a car thief that fit White's description.  Even though Ofc. Gaglione testified that his training and experience showed that some stolen cars are missing registration plates that alone does not create probable cause to conduct a warrantless search.

¶17    Second, the police did not have third-party consent to search the vehicle.  The police testimony shows that the police had no reason to believe that L.G. had actual or apparent authority over the vehicle.  The State must establish the "sufficiency of the consenting individual's relationship to the premises to be searched" in order to rely on that third-party consent.  *Kieffer*, 217 Wis. 2d at 542.  Actual authority requires "joint access or control" of the property such that it is "reasonable to recognize" that the co-inhabitant has the right to permit inspection.

---

[3] When we reviewed legal justifications for warrantless searches, we noted that Officer Gaglione's testimony excluded two commonly applied exceptions.  He testified that he had no indications that the vehicle contained contraband.  *See State v. Matejka*, 2001 WI 5, ¶23, 241 Wis. 2d 52, 621 N.W.2d 891 (explaining that "officers may search an entire motor vehicle without a warrant if there is probable cause to believe that the vehicle contains contraband").  And although the police asked White to exit the vehicle because he was agitated, there was no concern expressed that White was "an armed and dangerous individual" and that they were searching the vehicle as a result of a concern he had weapons.  *See State v. Williams*, 2010 WI App 39, ¶ 13, 323 Wis. 2d 460, 781 N.W.2d 495 (citation omitted).

*Id*. In the absence of actual authority, the "police may rely upon the third party's apparent common authority to do so, if that reliance is reasonable." *Id.* at 548. Here, the police watched the passenger enter the car after they spotted the car for the stop. Nothing in the record establishes L.G.'s actual or apparent authority over the vehicle such that L.G. could consent to the search.

¶18 The State has failed to show the search of White's vehicle was a reasonable search. At the suppression hearing, Ofc. Gaglione testified that he did not have probable cause to search the vehicle. After being informed that White was the owner of the vehicle, the officer did not ask White's consent to search the vehicle. Instead, when White was outside of the vehicle, the officer asked the passenger to check the glovebox to look for the title. Although the police characterized the question as a request and that L.G.'s actions were voluntary, we note that the passenger sat in the vehicle with a uniformed police officer standing at each door and she had no authority to consent to a search of the vehicle. A third party with no apparent authority over the vehicle cannot be used to thwart Fourth Amendment protections.

¶19 The State argues that because the police focused on determining the ownership of the vehicle and had no proof of White's ownership, it was reasonable to not ask White or L.G.'s consent to a search. Under the facts in the record, the police have failed to articulate specific reasons to consider this vehicle stolen. The police had access to the VIN number prior to the search of the glovebox; the decision to continue to search for ownership paperwork and not verify the VIN number does not justify the unreasonable search of the glovebox. The State has failed to show that the police focus on proving the ownership of the vehicle is an exception to the prohibition of warrantless search in the Fourth Amendment.

10

¶20    The circuit court's reasoning that searching for proof of the vehicle's ownership allowed the officers to search the vehicle without a warrant is an incorrect statement of the law.  Under these facts, opening the glovebox was a search and it was a search made without a warrant, without probable cause, and without lawful consent.   We conclude the search of White's vehicle was unreasonable and unlawful under the Fourth Amendment.  Because the search was illegal, the gun found in the glovebox was the fruit of an illegal search and should have been suppressed.  *See State v. Felix*, 2012 WI 36, ¶30, 339 Wis. 2d 670, 811 N.W.2d 775.  Therefore, the circuit court erred when it denied White's motion to suppress.  Accordingly, we reverse the judgment, and remand this cause to the trial court with directions to grant the suppression motion and conduct any necessary further proceedings consistent with this opinion.

*By the Court*.—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.